1

2   Dwight D. Coleman, Mildred R. COLEMAN
3   4220 Custis Avenue
    Sacramento California 95822

4   Attorney for Plaintiffs /PRO SE

5

**FILED**

AUG 2 3 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

6   U S District COURT OF THE STATE OF CALIFORNIA

7   **COUNTY OF SACRAMENTO**

8   2 11 - CV - 2 2 2 6 MCE GGH PS

9

10  DWIGHT DAVID COLEMAN and
    MILDRED R. COLEMAN,  PRO SE
11            Plaintiffs,

12            vs.

13  GMAC MORTGAGE; GREENPOINT
14  MORTGAGE FUNDING, INC; MARIN
    CONVEYANCE CORP.; SEGWAY
15  FINANCIAL, INC; FIRST AMERICAN
    TITLE COMPANY; BANK OF
16  AMERICA HOME LOANS;
    MORTGAGE ELECTRONIC
17  REGISTRATION SYSTEM, INC., AND
    DOES 1-100, inclusive.
18

19            Defendants.

20

**CASE NO.**

NOTICE OF REMOVAL
**COMPLAINT FOR DAMAGES**

1.  **VIOLATION OF FIN.CODE 50505**

2.  **ACCOUNTING**

3.  **VIOLATION COM.CODE 9313**

4.  **VIOLATION OF CIV.CODE 2932.5**

5.  **FRAUD AND EMBEZZELMENT**

6.  **SLANDER OF TITLE**

7.  **CANCELLATION OF CLOUD**

8.  **QUIET TITLE**

9.  **WRONGFUL FORECLOSURE/SELL**

10. **RESCISSION CIV.CODE 1688**

11. **VIOLATION BUS. PROF. 17200**

12. **CIVIL CONSPIRACY**

13. **INJUNCTIVE RELIEF**

**Unlimited Jurisdiction**

**Demand for Jury Trial**

21

22

23

24

25

26

27

28

---

COMPLAINT FOR DAMAGES

- 1 -

Plaintiffs DWIGHT DAVID COLEMAN and MILDRED R. COLEMAN, as joint tenants of the subject property herein, by and through counsel, for their Complaint against Defendants, including, but not limited to, GMAC Mortgage, GreenPoint Mortgage Funding, Inc., Marin Conveyance Corp., Segway Financial, Inc., First American Title Company, Bank of America Home Loans, Mortgage Electronic Registration System, Inc.[MERS], AND Does 1 through 100, inclusive (hereinafter collectively referred to as "Defendants") alleges as follows:

## INTRODUCTION

1.   This is an egregious case of mortgage fraud and predatory lending practices committed by Defendants herein.  Plaintiffs resided in their family home and received a mortgage loan from the Defendants, and each of them.   The Defendants essentially concocted a mini-Ponzi scheme; putting Plaintiffs and many other unsuspecting homeowners in California into teaser-rate loans which required expensive and equity stripping refinancing which ultimately carried rates neither Plaintiffs nor anyone else could ever pay (thus gambling on ever increasing property values).    Like all such schemes, this one collapsed when property values ceased their unsustainable increases. Each Defendant participated in this wrongdoing and the violations set forth herein facilitated the wrongful scheme.  Plaintiffs has been left with a home with no equity, their home in an "upside down" position (and continuing to free fall in value) and mortgage payments that significantly eclipse their family's monthly income.  This action is to seek redress and restore to Plaintiffs the financial security they and their family had prior to the predatory assault on their finances.

---

COMPLAINT FOR DAMAGES

2. This flagrant and volatile mixture of predatory lending and mortgage fraud has resulted in horrific and devastating financial losses for these vulnerable and unsuspecting homeowners, like the Plaintiffs (along with many other California homeowners), causing them to lose all of the equity in their home and to be forced into an illegal foreclosure and REO sale of property, a mortgage that was intentionally "designed to fail" and make millions of dollars for the Defendants from the suffering and misfortune intentionally orchestrated by the Defendants.   The Defendants in this case have violated a panoply of state and federal lending laws and consumer protection and fair debt reporting laws.  They have committed fraudulent and deceptive acts, against unsuspecting homeowners, including Plaintiffs.  Plaintiffs, by virtue of their complaint, seek judicial redress for what has heretofore been a free-for-all onslaught to make illegal profits and wrongfully strip homeowners of their family homes.

3. When Defendants qualified Plaintiffs for a loan with a loan number of 0307727425 ("Subject Loan") and became obligated for a secured interest in their home, Defendants failed to abide by the most important underwriting guideline governing whether a loan should be issued – that is, determining if Plaintiffs had sufficient income to pay the monthly payments.  Defendants submitted a loan application on Plaintiffs' behalf, which had no stated income and no documentation regarding Plaintiffs' monthly income. (Income on 1003 is stated as Pension/Retirement Income for $7200 and $4700, please verify).  The only major asset listed on Plaintiffs' loan application was their home. Plaintiffs do not recall signing said loan application or any discussion of the content of said application. Instead, on Plaintiffs' information and belief, Defendants qualified

Plaintiffs for the Subject Loan based exclusively on the equity in Plaintiffs' home at the time the loan application was filed. The bottom line here was: Defendants, being lenders and mortgage brokers, or purported mortgage brokers, knew that the only way Plaintiffs could pay for the Subject Loan was to continue to strip equity out of their home through repeated refinancing.

4. Defendant's actions were classic predatory lending practices. The United States Office of the Comptroller of Currency has opined on what it characterized as a touchstone of predatory lending, i.e., where the lender fails to determine whether a borrower can reasonably be expected to repay the loan from resources *other than* the collateral in the home. ***O.C.C. Policy Letter AL2003-2***. Elaborating, the Office of the Comptroller noted that, when a lender relies upon the liquidation value of the borrower's collateral, it commits <u>classic acts of predatory lending</u>. In this case, the Defendants could not possibly have relied upon anything other than the liquidation value of the collateral in Plaintiffs' home as the basis for granting the loan at issue in this case.

5. One thing that was evident is that it is very difficult to determine who the actual owner of the promissory note is and what payments have been made on the promissory note. Also, since MERS is the only beneficiary on the Deed of Trust [See **Exhibit "B"** attached herein], neither Plaintiffs nor anyone else can tell who exactly the beneficial owner of the promissory note is.

6. Turning back to the inception of the Subject Loan, the remaining Defendants, when lending money to Plaintiffs, knew, or should have known, that the only way Plaintiffs could pay the monthly installments would be to eat into the equity in their

## COMPLAINT FOR DAMAGES

home.  In their dealings with the Defendants who sold Plaintiffs the Subject Loan, they had sufficient information to verify Plaintiffs' income and ability, or inability, to pay the Subject Loan.

7.  The confluence of events described above has resulted in Plaintiffs' house being stripped of all equity.  Plaintiffs have been driven into a situation where their house is "upside down" with a lien against their house in an undetermined amount due to so many entities and individuals being involved with a colorable claim or equitable interest in the subject property, and a fair market value of $ 175,000 (Zillow) or less and still dropping.  This outrageous combination of predatory lending and mortgage fraud has resulted in shocking and tragic financial losses for the Plaintiffs.  This action is to seek redress and restore to Plaintiffs the financial security they had prior to this predatory assault on their finances.

8.  Cal. Civil Code 2923.6 states as follows:

a)  The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply.

(1) The loan is in payment default, or payment default is reasonably foreseeable.

---

## COMPLAINT FOR DAMAGES

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agents offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

15.    On information and belief, Plaintiffs allege that a loan modification will often result in a recovery on a net present value basis, <u>greater</u> than a foreclosure, especially if there is a principal reduction in the loan, and this reduction is true for the Plaintiffs herein and the Subject Property.  Further, the US Government has instituted several programs to allow the homeowner to save their homes from foreclosure and subsidize the lender so that the Lender does not suffer a loss.

16.    It is not surprising that among the list of Defendants in this case is GMAC MORTGAGE WHO IS ONE OF 14 BANKS BEING INVESTIGATED BY THE DEPARTMENT OF JUSTICE FOR ILLEGAL AND WRONGFUL FORECLOSURE AMONGST OTHER PREDATORY ACTIONS AND THEIR SERVICING ENTITIES. And GREENPOINT IS "out of business"  In the 20th Century, Goldman Sachs has always been a major catalyst in the demise of the US economy on many occasions.  Plaintiffs tried to get details of their loan, that is, the subject loan

COMPLAINT FOR DAMAGES

**herein, from** GREENPOINT MORTGAGE [successor in interest of GMAC MORTGAGE] but could not get information from Defendant GMAC MORTGAGE SERVICING  Over the several months, Plaintiffs obtained the following information:

(a) In 2007, Defendant GREENPOINT MORTGAGE and other Defendants failed and were shut down, and said Defendants were guilty of having, no underwriting standards for approval of home loans.

(b) In July 2009, Rolling Stone Magazine (by its writer Matt Taibbi) wrote an article called **"The Great American Bubble Machine,"** which gave a chronology of a century of wrongful and fraudulent conduct by Goldman Sachs, its fraudulent investment banking activities, its unlawful manipulation of the US stock market and its major contribution to the demise of the housing market in 2006, 2007, 2008 and to the present. The article sets forth the securities fraud committed by Goldman Sachs as investment bankers and underwriters of the mortgage-backed securities [MBS] generated from the bundling of mortgages through lender banks, such as and Countrywide Mortgage.  The article convincingly shows that Goldman Sachs was clearly aware of the substandard condition of the mortgages being approved by COUNTRY WIDE, GREENPOINT MORTGAGE, SEGWAY FINANCIAL..  Goldman Sachs falsely marketed those mortgages as solid and safe investments on the secondary market to private and institutional investors and then turned around and took out insurance policies through AIG, thereby betting that the mortgages would ultimately fail. Further, Goldman Sachs went even further and participated in "short sale transactions" whereby they would, and

---

surely did, profit by the MBS packages going <u>DOWN</u> in value.    Singlehandedly,

Goldman Sachs was the primary and major catalyst of the Housing Crash of 2008 and is

directly responsible for the devaluation of American homes throughout the United States.

Due to their illegal and wrongful conduct, in October of 2008, Goldman Sachs went to

the federal government to literally "bail them out" of these MBS products; they were

going to be sued by all of the institutional investors who bought these substandard MBS

products. [In fact, many investors sued them anyway]    The article blatantly called

Goldman Sachs guilty of "Securities Fraud", in that they structured the securitization of

IndyMac Bank mortgages (along with many others) in such a manner that they were

"designed to fail" and such failure would inure to the benefit of Goldman Sachs who

ultimately bet <u>AGAINST</u> the success of the mortgages, by securities "short sale"

transactions. That is, they wanted [or reasonably knew] that the mortgages would fail so

that they could make millions of dollars. This scheme or plan has been confirmed by the

recent April 2010 Congressional Hearings on the activities of Goldman Sachs.

"Investment banks such as Goldman Sachs were not simply market-makers, they were

self-interested promoters of risky and complicated financial schemes that helped trigger

the crisis," said Democratic Senator Carl Levin, Chairman of the Senate Permanent

Subcommittee on Investigations. In addition, said  Senator Levin, "[Goldman Sachs]

often betted against the instruments it sold and rolled in profits as a result."   Finally,

Senator Levin observed: "These emails [between Goldman Sachs executives] show that,

in fact, Goldman made a lot of money by betting against the mortgage market [after

having convinced investors to purchase these mortgage-backed securities as sound

## COMPLAINT FOR DAMAGES

investments]."   The emails provide "hard proof" that Goldman Sachs knew that the mortgage-backed securities were of poor quality and "designed to fail."

(c) Goldman Sachs was hit with a wave of lawsuits, after the collapse of the housing bubble.  For example, New York state regulators sued Goldman Sachs for selling bundles of substandard Countrywide mortgages to government pension funds which lost 100 million dollars.  Also, Massachusetts Attorney General sued Goldman Sachs for similar wrongdoings.  Goldman Sachs prevented prosecution by agreeing to pay $60 million in damages. And now, very recently, on April 16, 2010, the Securities Exchange Commission has filed a civil securities fraud lawsuit against Goldman Sachs for selling mortgage-backed securities [MBS] "designed to fail" and allowing themselves to "bet against" those securities in a clear violation of conflicts of interest. Articles written on this lawsuit read as follows: "GOLDMAN SACHS SUED BY SEC FOR FRAUD TIED TO CDO'S"   These lawsuits make it very clear that Goldman Sachs committed, and is continuing to commit, securities fraud; and is, and was, a major wrongdoer in the collapse of the US housing market. Lately, there are class action lawsuits pending in state and federal courts, some of which have certified the "class of victims."

(d) Also, based on the conduct of Defendants, and each of them, in "securitizing" the mortgage loans, including the subject loan of Plaintiffs,  they committed a violation of state[California]  securities laws, specifically Sections 25401 and 25501 of the California Corporate Securities, and federal securities laws, specifically Sections 11, 12, and 15 of the Securities Act of 1933. These violations were very similar to the violations and facts leading up to the institutional investor lawsuits being filed in

---

## COMPLAINT FOR DAMAGES

the year of 2009 against Goldman Sachs and other Wall Street investment firms like J.P. Morgan Securities, Inc., Bear Stearns & Co., and Deutsche Bank Securities, Inc. Defendants, and each of them, made numerous false and misleading statements and representations to institutional and foreign investors about the quality of stock certificates in the Mortgage-Backed Securities [MBS] and the credit quality of the mortgage loans, including Plaintiffs' loan) bundled into the MBS pools.  Further, the Defendants, and each of them, omitted to state many material facts that were necessary in order to make their statements accurate and not misleading.  Examples of material facts that were misleading and untrue [and therefore, fraudulent] related to the following: (1) the percentage of equity that borrowers had in their homes, (2) the number of borrowers who actually lived in the house that secured their loans, (3) the credit scores of the borrowers, (4) the business practices of the lenders that made the loans, and (5) the appraisals of the properties that secured the mortgage loans that were biased upward in the appraisal and fraudulently and untruthfully prepared to support the false loan-to-value ratios created by Defendants.

## SECURITIZATION OF PLAINTIFF'S MORTGAGE LOAN

17. The securities that the Defendants sold to third party investors are so-called asset-backed securities (or ABS) or mortgage-backed securities (or MBS) created in a process previously stated above as *Securitization*.  Securitization begins with loans (for example, loans secured by mortgages on residential properties) on which the borrowers are to make payments, usually monthly.  The entity that makes the loans is known as the

COMPLAINT FOR DAMAGES

originator of the loans.    The process by which originator (such as GREENPOINT MORTGAGE) decides whether to make particular loans is known as the underwriting of loans.  In the loan underwriting process, the originator applies various criteria to try to ensure that he loan will be repaid.  <u>Until loans are securitized</u>, the borrowers on the loans make their loan payments to the originator.  Collectively, the payments on the loans are known as the cash flow from the loans.

18. In a *securitization*, a large number of loans, usually numbered in the thousands and of a similar type, are grouped into a **collateral pool**.  The originator (that is, GREENPOINT MORTGAGE) of those loans <u>sells</u> them (and, with them, the right to receive the cash flow from them) to a **trust.  The trust pays the originator cash for the loans.**  The **trust** raises the cash to pay for the loans by selling bonds, usually called **certificates**, to private investors.  Each certificate entitles its holder to an agreed part of the cash flow from the loans in the collateral pool.

19. Each securitization has a **sponsor**, the prime mover of the securitization. Sometimes the sponsor is the originator or an affiliate.    In originator-sponsored securitizations, the collateral pool usually contains loans made by the originator that is sponsoring the securitization.   Other times, the sponsor may be an investment bank, which purchases loans from one or more originators (such as GREENPOINT), aggregates them into a collateral pool, sells them to a trust, and securitizes them.   The sponsor arranges for title to the loans to be transferred to an entity known as the **depositor** (again, GREENPOINT AND SEGWAY FINANCIAL served this role also), which then transfers title to the loans to the **trust.** The obligor of the certificates in a securitization is

the trust that purchases the loans in the collateral pool.  Because a trust has no assets other than the loans that it purchased, it may not be able to satisfy the liabilities of an issuer of securities (the certificates).  The law therefore treats the depositor as the **issuer** of an asset-backed certificate or mortgage-backed certificate.

20. Investment banks play a critical role in the process of securitization.  Such banks underwrite the sale of the MBS certificates, that is, they purchase the certificates from the **trust** and then sell them to investors (usually institutional investors).  Equally important, securities underwriters (such as Goldman Sachs) provide to potential investors the information that they need to decide whether to purchase certificates.

21. Because the cash flow from the loans in the collateral pool of a securitization is the source of funds to pay the holders of the certificates issued by the trust, the credit quality of those certificates is dependent upon the credit quality of the loans in the collateral pool.  The most import information about the credit quality of those loans is contained in the files that the originator (such as Segway Financial and Green Point Mtg. ) develops while making the loans, the so-called loan files.  For residential mortgage loans, each loan file normally contains the information in such important documents as the borrower's application for the loan, credit report on the borrower, and an appraisal of the property that will secure the loan.

22. Collateral pools usually include thousands of loans.  Instead of potential investors reviewing thousands of loan files, the  investment bank or securities underwriters(such as Goldman Sachs) are responsible for gathering, verifying, and presenting to potential investors the information about the credit quality of the loans that

---

## COMPLAINT FOR DAMAGES

will be deposited into the trust.  Defendants herein presented to the investors of the MBS trusts many statements that were material to the credit quality of those loans, but, Plaintiffs herein alleges, on information and belief, that those statements were untrue and/or misleading.  Moreover, on information and belief, the Defendants were negligent in making those untrue or misleading statements to those investors, and (indirectly and directly) negatively impacted the subject loan of Plaintiffs and the subject property of Plaintiffs herein.

## **PARTIES TO THIS ACTION**

23. At all times relevant herein, Plaintiffs were over the age of eighteen and are and were a resident of County of Sacramento, State of California, residing on the residential property, subject to this Complaint, which is located at 4220 CUSTIS AVENUE City of SACRAMENTO, Zip Code: [ 95822 ] County of Sacramento, State of California ("Subject Property").

24. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant GREENPOINT MORTGAGE is the successor of GMAC MORTGAGE SERVICING A division of GMAC LLC a for-profit federally chartered savings and loan association in the business of providing mortgage products and services in the State of California.

25. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants was a California corporation authorized to conduct business in the State of California.  Defendant, GMAC MORTGAGE LLC, FKA GMAC.

Plaintiffs are further informed and believe, and thereon allege, that at all times mentioned herein,

26. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, First American Title was a California corporation conducting business in the State of California.

27. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned in this Complaint, Defendants GMAC Mortgage Servicing  as Successor to GreenPoint Mortgage Segway Financial, First American Title and ETS,LLC Foreclosure Corporation, MERS AND Does 1 through 100, , are diversified financial marketing and/or services corporations and/or individuals engaged primarily in residential mortgage banking and/or related businesses.

28. Plaintiffs are informed and believe, and thereon allege, that MERS is a Delaware corporation engaged in the business of holding title to mortgages.  It does business in California as evidenced by inclusion of its name on the Deed of Trust of the Subject Property herein.   MERS was NOT registered to do business in California and its corporate powers are suspended by the California Secretary of State and thereafter on December 1, 2005 by the California Franchise Tax Board.; and its agent for service of process resigned March 25, 2009.   The Deed of Trust on the subject property herein states:

> "The beneficiary of this security instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This security instrument secures to Lender (i) repayment of the Loan and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, the Borrower irrevocably

## COMPLAINT FOR DAMAGES

> grants and conveys to Trustee, in trust, with power of sale the
> following described property."

29. Plaintiffs are informed and believe, and thereon allege, that MERS' conduct,

with respect to the Promissory Note and the Deed of Trust in this case, is governed by

"MERS Terms and conditions" applicable to Defendants which state that:

> "MERS shall serve as mortgagee of record with respect to all such
> mortgage loans solely as a nominee, in an administrative capacity,
> for the beneficial owner or owners thereof from time to time.
> MERS shall have no rights whatsoever to any payments made on
> account of such mortgage loans to any servicing rights related to
> such mortgage loans, or to any mortgaged properties securing such
> mortgage loans. MERS agrees not to assert any rights (other than)
> rights specified in the Governing Documents) with respect to such
> mortgage loans or mortgaged properties. References herein to
> mortgage loans or mortgaged properties. References herein to
> "mortgage(s)" and "mortgagee of record" shall include deed(s) of
> trust and beneficiary under a deed of trust and any other form of
> security instrument under applicable state law."

30. As a result of said express conditions, and pursuant to California Commercial

Code Sections 1201(21), 3301, and 3309, and California Corporations Code Section 2205

et seq., Plaintiffs allege that MERS has no beneficial interest or right to enforce the terms

of the Promissory Note, because it is not in possession of the Promissory Note, has no

authority to conduct a non-judicial foreclosure sale, and due to its suspended corporate

status in California as a foreign corporation, it has no power to conduct any business

activity in California whatsoever.

31. Plaintiffs are informed and believe, and thereon allege, that at all times

mentioned in this Complaint, Defendants, and each of them, sold Plaintiffs the mortgage

involved herein on or about May 2005.

## COMPLAINT FOR DAMAGES

32. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned in this Complaint, Defendants, and each of them, were loan officers who sold Plaintiffs the mortgage at issue in the May 2005.

33. Plaintiffs is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and Plaintiffs will amend this Complaint to allege such names and capacities as soon as they are ascertained. Plaintiffs are informed and believe, and thereon allege, that each of said fictitiously named Defendants is responsible in some manner for the wrongful acts complained of herein. Specifically, Plaintiffs expects to obtain from Defendants, and especially Defendant GMAC Mortgage LLC, the names and addresses of the individuals and entities involved in the securitization of the mortgage and loan herein and thus responsible for the damages suffered by Plaintiffs.

34. Whenever reference is made in this Complaint to any act of any defendants, that allegation shall mean that each defendant acted individually and jointly with the other defendants.

35. Any allegation about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

36. At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this

---

**COMPLAINT FOR DAMAGES**

Complaint.   Additionally, some or all of the defendants acted within the scope their agency if acting as an agent of another.

37. Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, at all relevant times herein were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.   At all relevant times, each of the defendants knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts.   Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

## JURISDICTION AND VENUE

38. The transactions and events which are the subject matter of this Complaint all occurred within the County of Sacramento, State of California.

39. The Subject Property herein at 4220 CUSTIS AVENUE, SACRAMENTO [95822] is located within the County of Sacramento, State of California.

## FACTUAL ALLEGATIONS

40. This action arises out of a loan related activity to the Subject Property of which Plaintiffs are the rightful owners.

41. Plaintiffs are informed and believe, and thereon allege, that beginning in 1998 and continuing thereafter, and such facts are so well known as to be Judicially Noticeable under California Evidence Code Sections 451 and 452, lenders, their agents, employees,

## COMPLAINT FOR DAMAGES

and related servicers, including Defendants, developed a covert scheme or conspiracy to rapidly infuse capital into the home mortgage lending system by selling mortgages on the secondary market, normally three to five times, to create a bankruptcy remote transaction. The lenders, their agents, employees, and related servicers, including Defendants, then pooled these mortgages into large trusts, securitizing the pool and selling those securities on Wall Street as mortgage backed securities, bonds, derivatives and insurances, often for twenty or thirty times the original mortgage, while creating fraudulent appraisals of the fair market values of the mortgage-backed securities, which bundled Plaintiffs' mortgage and many other unsuspecting homeowners.

42. Plaintiffs are informed and believe, and thereon allege, that in "selling" these mortgage notes on the secondary market in the form of "mortgage-backed securities ["MBS"] Defendant failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property.  While lenders, including defendants herein, could have simply gone to Congress to amend existing law so that it would allow for their envisioned transfers, they did not.  Instead, the Defendants simply ignored the legal requirements.

43. Plaintiffs are informed and believe, and thereon allege, that no interest in the Mortgage Note, Deed of Trust or the subject property was ever legally transferred to any of the Defendants, and that Defendants are in effect "straw men," and parties without any standing before this Court to assert legal rights with respect to this contractual transaction.

**COMPLAINT FOR DAMAGES**

44. Further, Plaintiffs are informed and believe, and thereon allege, that as this process became more and more profitable, Defendants, repeatedly reduced the underwriting requirements to ensure more and more unsuspecting borrowers. As the lenders reduced the underwriting requirements, they introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance borrowers' loans, taking as much equity as possible, and artificially driving up housing prices.

45. Plaintiffs are informed and believe, and thereon allege, that lenders, including, but not limited to, Defendants GREEN POINT MTG.,GMAC  MORTGAGE LLC , AND OTHER SERVICERS regularly trained, directed, authorized and/or participated with mortgage brokers to implement this unlawful and fraudulent scheme, giving them monetary incentives, including "unreasonable" Yield Spread Premiums [which were commissions for selling the mortgage products], to violate borrowers' trust and force them into loans that they could not maintain over any length of time.

46. Defendants, and each of them, advised Plaintiffs that they could get them a loan with low payments. The first loan was an adjustable rate loan with a teaser rate of 1.00% with a cap of about 9/9.5% which included a three year prepayment penalty.

47. When Plaintiffs applied for this loan, they accurately described their family income and provided Defendants with documentation of their family income including tax returns, bank statements, W-2's, and 1099s.  Plaintiffs are now informed and believe and, and thereon allege, that their income was over stated on the loan application by Defendants, and each of them, without their knowledge or permission.  Plaintiffs are informed and believe, and thereon allege, that Defendant underwriters (including, but not

limited to, Goldman Sachs & Company, which is an investment banking firm) knew or should have known of the fraudulent information on the loan application but approved the loan anyway.

48. Defendants and each of them, further advised Plaintiffs that if the loan ever became unaffordable, they would simply refinance it into an affordable loan; something Defendants, and each of them, knew that such statements were false and misleading. Defendants, and each of them, knew or should have known that these misrepresentations were designed to induce Plaintiffs to accept this loan to their detriment.

49. Plaintiffs were not given a copy of any of the loan documents prior to closing as required. At closing, Plaintiffs was only given a few minutes to sign the documents. The notary did not explain any of the loan documents nor were Plaintiffs allowed to review them. Plaintiffs were simply told to sign and initial the documents provided by the notary. Further, Plaintiffs did not receive the required copies of a proper notice of cancellation.

50. The facts surrounding this loan transaction were purposefully hidden to prevent Plaintiffs from discovering the true nature of the transaction and the documents involved therein. Facts surrounding this transaction continue to be hidden from the Plaintiffs to this day, despite Plaintiffs' effort to obtain information by way of a QWR letter as authorized by California Financial Code Section 50505.

51. On or about November 2006, Plaintiffs completed the loan on the subject property, in the amount of $390,000. The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the subject property. The

---

**COMPLAINT FOR DAMAGES**

Deed of Trust identified Marin Reconveyancing Corp as Trustee, and GreenPoint Mortgage Funding, as Lender and MERS solely as nominee.

52. The said Deed of Trust also identified MERS as nominee for the Lender and Lender's successors and assigns, and the beneficiary of the said Deed of Trust. Recently discovered within 180 days of the filing of this complaint, Plaintiffs is informed and believes, and thereon alleges, that MERS has no standing in this forum. It is not licensed to be and/or act as a nominee or a beneficiary of any of the Defendants, nor does its Terms and Conditions, enumerated above, permit MERS to act in such capacity. Plaintiffs are informed and believe, and thereon alleges, that MERS was developed to be a document storage company, not a nominee or a beneficiary of any of the Defendants. Therefore, the Deed of Trust must fail. Further, Plaintiffs is informed and believes, and thereon alleges, that MERS was not licensed to do business in the State of California, and was not registered with the State of California at the inception of the loan involved herein. Further, the powers, rights and privileges of MERS were suspended on November 9, 2004 by the California Secretary of State and thereafter on December 1, 2005 by the California Revenue and Taxation Code.

53. On or about April 2010, a Qualified Written Request ("QWR") under Section 50505 of the California Financial Code [California Residential Mortgage Lending Act aka "CRMLA"] was mailed to Defendant GMAC MORTGAGE SERVICING, a division of GMAC MORTGAGE, LLC included a demand to rescind the loan under Section 1688 *et seq.* of the California Civil Code, and Section 337 of the California Code of Civil Procedure [See: **Exhibit "C,"** attached herein] Further, Plaintiffs declared the mortgage

---

## COMPLAINT FOR DAMAGES

to be "in dispute", null and void, and no further payments would be made until the QWR is properly answered and a resolution of the dispute is reached. Defendants, including GMAC Mortgage Servicing, have yet to properly respond to this Request, or alternatively, Defendants claimed that they had no obligation to provide the information requested because it did not relate to the "servicing of the loan," even though in fact the information requested was relevant to inaccuracies in the payment of the loan.

54. On information and belief, Plaintiffs allege that each of the Defendants is not a "person entitled to enforce" the security interest under the Note and the Deed of Trust, as defined in California Commercial Code Section 3301. Plaintiffs alleges that Defendants sold home loans, Plaintiffs' home loan included, through a secondary market which includes other financial entities, and which "pooled" large numbers of loans, put them into trusts, and sold securities (so-called "Mortgage-backed securities") based on such loans. Plaintiffs allege that Defendants do not own the loan subject to this action, and are not entitled to enforce the security interest.

55. On information and belief, Plaintiffs allege that Defendants regularly approved unqualified borrowers and implemented unlawful lending practices. Further, Plaintiffs allege that Defendants, and each of them, employed brokers and loan officers (including, but not limited to, Defendant Does) who were paid commissions, including Yield Spread Premiums, and based on the volume of loans they sold to consumers, Plaintiffs included. Plaintiffs allege that Defendant Doe loan officers received a greater commission or bonus for placing borrowers in loans with relatively high yield spread premiums. As such, borrowers, Plaintiffs included, were steered and encouraged into

## COMPLAINT FOR DAMAGES

loans with terms unfavorable to them, or loans which the borrowers, Plaintiffs included, were not qualified to obtain.

56. Defendants are attempting to obtain putative legal title to Plaintiffs' Subject Property without having established that any Defendants were ever a "person entitled to enforce" the security interest under the Note and the Deed of Trust.

57. Upon information and belief, Plaintiffs contend that each Defendant, in fact, is not a "person entitled to enforce" said interest. Upon information and belief, Plaintiffs contend that no legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiffs' subject Property was effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiffs' Mortgage Note, Deed of Trust or any other interest in Plaintiffs' subject Property.

58. Plaintiffs entered into a loan transaction with Defendants, Inc., which was subject to finance charges, and which was initially payable to Defendant IndyMac Bank, under the terms and conditions of the subject Deed of Trust.

59. Plaintiffs allege that Defendants were required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with the Loan.

60. Defendants, including Defendant Does, as agents for the Lender, including the named lenders herein, were required to provide Plaintiffs with said disclosures, but failed to do so.

61. On or about June 2010, Notice of Default [See: **Exhibit "D"**,  attached herein and incorporated herein by reference as if set forth in full] was filed in Sacramento County, California by Defendant ETS Foreclosure Corporation.  This notice, however, identified Defendant ETS Foreclosure Corporation, as the original Trustee (which it was not), the substitute Trustee or acting as agent for the Beneficiary under the Deed of Trust. The notice failed to explain when, how or under what authority Defendant  ETS Foreclosure Corporation became a substitute Trustee or an agent for the Beneficiary.

62. On information and belief, Plaintiffs allege that in all of the wrongful acts alleged herein, Defendants, and each of them, have utilized the United States mail, telephones and internet in furtherance of their pattern of unlawful and illegal conduct to collect on negotiable instruments when they were not entitled to do so.

63. Further, Defendants fraudulently added costs and charges to the payoff amount of the Note that were not justified or proper under the terms of the Note or the law.

64. In pursuing the non-judicial foreclosure, Defendants represented that they have the right to payment under the Mortgage Note, payment of which was secured by the Deed of Trust. Whereas in fact, Defendants, and each of them, are not the real parties in interest because they are not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment, as required by the California Commercial Code Sections 3301 and 3309, and California

Civil Code Section 2924 *et seq.* Therefore, Defendants instituted foreclosure proceedings against Plaintiff(s)' subject Property without rights under the laws

65. Due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiffs regarding the roles and identities of the various entities that were purportedly handling their Loan at any time, these allegations herein are generally pleaded as to all Defendants.

66. The misrepresentations and allegations stated herein were all discovered within several months of filing this lawsuit; such that any applicable statute of limitations are extended or should be extended pursuant to the equitable tolling doctrine or other equitable principles, as well as California Code of Civil Procedure Section 337 *et seq.*

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FINANCIAL CODE SECTION 50505
### (Against ALL Defendants)

67. Plaintiffs incorporate herein by reference each and every allegation set forth above.

68. The Loan transaction between Plaintiffs and Defendants is a mortgage loan covered by CRMLA, and codified in Section 50505 of the California Financial Code which states: "[a]ny person who violates any provision of [RESPA] or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

69. Plaintiffs are not certain at this time exactly which of Defendants was actually the servicer of the Loan at any given time. However, due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiffs

## COMPLAINT FOR DAMAGES

regarding the roles and identities of the various entities that were purportedly handling their Loan at any given time, these allegations are generally pled and made as to all Defendants.

70. Defendants, and each of them, and other Doe Defendants, violated CRMLA [which includes RESPA violations] at the time of the closing of the Loan subject to this Complaint by failing to correctly and accurately comply with the disclosure requirements provided therein.

71. Defendants ,and other   Doe Defendants, violated CRMLA by violating RESPA, 12 U.S.C. Section 2605 (e) (2), in that they failed and refused to provide a proper written explanation or response to Plaintiffs' QWR sent on or about April 2010 as set forth above.   Further, Defendants violated CRMLA by violating RESPA in the following manner:  (1) failing to provide the information requested by Plaintiffs,  (2) failing to make corrections to Plaintiffs' account, and provide written notification of correction; and,  (3) by failing to provide a written explanation of why the servicers, Defendants, including but not limited to,  GMAC Mortgage Services,  believe   the account in connection with the Subject Loan is correct, along with the name and telephone number of the GMAC Mortgage Services representative in response to the QWR.

72. Plaintiffs are informed and believe, and thereon allege, that these Defendants have engaged in a pattern or practice of non-compliance with CRMLA. and therefore the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. Section 2605.

---

**COMPLAINT FOR DAMAGES**

73. As a result of Defendants' failure to comply with RESPA and CRMLA, Plaintiffs have suffered and continue to suffer damages and costs of suit. Plaintiffs are entitled to recover statutory damages, actual damages in an amount to be determined at trial, and costs and reasonable attorney's fees. 12 U.S.C. Section 2605 (f) (1), (3).

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## SECOND CAUSE OF ACTION

### ACCOUNTING
### (Against ALL Defendants)

74. Plaintiffs incorporate herein by reference each and every allegation set forth above in this Complaint.

75. A controversy exists between Plaintiffs and Defendants, and each of them, with respect to the correct amount of money that is actually owed by Plaintiffs to Defendants, and each of them. However, Defendant GMAC Mortgage Services, and the remaining Defendants, refuse to provide an accurate accounting or allow Plaintiffs' representatives to audit Defendants' books and records as they relate to Plaintiffs' subject loan herein. Defendants, and each of them, are required to facilitate an accounting due to the special relationship created by CRMLA and codified in Section 50505 of the California Financial Code, wherein a Qualified Written Request was presented to Defendants on or about April 2010.

76. Pursuant to the mandate of CRMLA, set forth above, Plaintiffs require that Defendants, and each of them, make available its books and records (only as they relate

## COMPLAINT FOR DAMAGES

to the Plaintiffs' subject loan herein) in order that Plaintiffs may have themselves or a certified public accountant, or similarly qualified representative, audit the books and records.

77. Plaintiffs request that the court order an accounting between Plaintiffs and Defendants, determining the amount, if any actually due and owing from Plaintiffs to Defendants, and each of them, and such other and further relief as allowed by the court in accordance with the applicable laws

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

### THIRD CAUSE OF ACTION

**Determine Nature, Extend and Validity of Lien under
California Commercial Code §9313**

**(Against ALL Defendants)**

90. Plaintiffs incorporate herein by reference each and every allegation set forth above in this Complaint.

91. A written instrument that purports to be a Deed of Trust executed by Plaintiffs is presently in existence and under Defendants' control. The Deed of Trust is voidable in that there is no enforceable underlying promissory note for the deed of trust to secure.

92. Prior to the commencement of this case, said Defendants purportedly received a copy of a promissory note which they intend to foreclose upon. Plaintiffs allege, on information and belief, that said Defendants, especially MERS, who purports to be the beneficiary of the note, do not possess the original promissory note nor did defendants ever take actual possession of the original promissory note.

## COMPLAINT FOR DAMAGES

93. Defendants failed to comply with California Commercial Code §9313.

94. As a result, defendants never perfected their interest in the above referenced deed of trust.

95. Said unperfected security interest of defendant is void as to Plaintiffs by virtue of California laws, and specifically by Commercial Code Section 9313.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

### FIFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 2932.5

### (Against ALL Defendants)

96. Plaintiffs incorporate herein by reference each and every allegation set forth above in this Complaint.

97. Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

98. Mortgage Electronic Registration System, Inc. **[MERS]** has been named the beneficiary for the Subject Loan herein.   MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the

---

## COMPLAINT FOR DAMAGES

same time, assist said Defendants in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved said Defendants money, manpower and the costs of recording these notes and the assignment of these notes and deeds of trust.  It was also designed to "shield" and hide the names and addresses of investors from exposure to liability as a result of lender's "predatory lending practices and misconduct regarding the process of mortgage lending.

99. MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

100.  Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal.  The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absence of the assignment and physical delivery of the note will result in a nullity.

101.  It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note.

---

**COMPLAINT FOR DAMAGES**

102. The existence of MERS indicated numerous violations of the California Business and Professions Code as well as Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary.  Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.

103.  One can only conclude, after a reading of this section [Section 2932.5 of the California Civil Code], that MERS has no legal standing to foreclose.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## SIXTH CAUSE OF ACTION

## FRAUD – CALIFORNIA CIVIL CODE §1572

### (Against ALL Defendants)

104.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105.  Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiffs and inducing them to sign the mortgage loan documents and  to part with their personal and real property by using a stated income loan.

106. The credit application and/or available W-2's provided by Plaintiffs was enough, in addition to the application itself for Defendant's to know what type of loan should be offered, and what the Plaintiffs' could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is statutory fraud. Plaintiffs is informed and believes, and thereon alleges, that Defendants engaged in the

## COMPLAINT FOR DAMAGES

unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

107. This loans was fraudulent, by suppression of facts, with intent to deceive, and to induce Plaintiffs to sign the mortgage/loan documents, because:

(a) it was not clear that borrowers will be in negative-amortization from the beginning;

(b) the teaser rate offered for the beginning of the loan ONLY is illusory and never really in effect;

(c) the payment schedule on the disclosure statements of the loan does not identify the kind of payment, i.e., negative-amortization, that borrower is getting; and

(d) underwriting a borrowers based on a negative-amortization payment is "knowingly" selling a mortgage loan that will fail;

(e) eliminating underwriting standards for evaluating the borrowers' ability to pay is "knowingly" selling a mortgage loan that is designed to fail;

(f) bundling the Plaintiffs' mortgage in "mortgage-backed securities"{MBS] into securitized mortgage pools with other mortgages that are based on substandard underwriting standards with no guidelines for borrowers' ability to pay is "knowingly" forming MBS structures that will ultimately fail and become worthless due to a multitude of defaulting loans;

(g) establishing insurance in the event of default of the MBS pools and thereafter "shorting the market" on the MBS pools (that is, betting against the success or

survival of the MBS pools is "knowingly" establishing the MBS pools for failure while being in a conflict of interest as a fiduciary  investment bank or mortgage servicer or agent; and

(h) arranging for false or inflated appraisals of the MBS pools for the purpose of sale to investors is "knowingly" encouraging the failure of the MBS pools and negatively impacting and damaging the value of Plaintiffs' subject property herein.

108.  As alleged herein, Defendants, and each of them, and other Doe Defendants, made false representations to Plaintiffs regarding material facts, including, but not limited to, interest rates, financing options, availability of refinancing, and Plaintiffs' qualification for this loan, and securitization of the mortgage, at the inception of this transaction, designed to fraudulently induce Plaintiffs to enter into this transaction.

109.  As alleged herein, Defendants, and each of them, regularly trained, directed, authorized and/or participated with mortgage brokers to implement this scheme, giving them monetary incentives to violate the borrowers' trust.

110.  As alleged herein, Defendants GMAC MORTGAGE,LLC and other Defendants, misrepresented to Plaintiffs that GMAC MORTGAGE LLC and other Defendants, have the right to collect monies from Plaintiffs on its behalf  or on behalf of others when Defendants GMAC MORTGAGE SERVICING and other Defendants, had no legal right to collect such monies.

111.  As alleged herein, Defendant MERS misrepresented to Plaintiffs on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust.  Further,

**COMPLAINT FOR DAMAGES**

Defendant MERS misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of Trust to subsequent beneficiaries.

112. As alleged herein, Defendants misrepresented to Plaintiffs that it was entitled to enforce the security interest and has the right to institute a non-judicial foreclosure proceeding under the Deed of Trust when they file or filed a Notice of Default. In fact, Defendants was not a trustee, mortgagee or beneficiary, nor is they authorized agents of the trustee, mortgagee or beneficiary, nor is they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment, as required by California Commercial Code Sections 3301 and 3309. As a result, Defendants did not have the right to initial foreclosure proceedings herein under California Civil Code Section 2924 et seq.

113. These material representations made by Defendants were false.

114. Defendants knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

115. Defendants intended that Plaintiffs rely on these material representations.

116. Plaintiffs reasonably relied on said representations.

117. As a result of Plaintiffs' reliance, they were harmed and suffered damages. Plaintiffs' reliance on Defendants' false material representations was a substantial factor in causing Plaintiffs' harm and damages.

118. Additional evidentiary facts constituting fraud in this matter are within Defendants' knowledge and possession.

## COMPLAINT FOR DAMAGES

119. Defendants and each of them, conspired together to perpetrated the fraud alleged herein over the course of several years.

120. Defendants are guilty of malice, fraud, and/or oppression, as defined in California Civil Code Section 3294. Defendants' actions were malicious and done willfully; in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs. As such, Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

121. Plaintiffs justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiffs' damages.

122. Plaintiffs are entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial. Further, fraudulent concealment voids the contract.

WHEREFORE, Plaintiffs pray for judgment against Defendants, as set forth herein.

## SEVENTH CAUSE OF ACTION

## SLANDER OF TITLE

### (Against ALL Defendants)

123. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124. On or about November 2, 2006, and thereafter, continuing to the present, Defendants willfully, wrongfully, without justification, and without privilege recorded

---

## COMPLAINT FOR DAMAGES

the said Deed of Trust of the Subject Property herein with Defendant MERS designated at the beneficiary of said Deed of Trust and Defendant GreenPoint. designated as Lender on said Deed of Trust.

125. The said Deed of Trust was false and misleading and caused doubt and a cloud to be placed over the Plaintiffs' title to the subject property herein.  As set forth above in this Complaint, Defendant MERS is an improper entity to designate as a beneficiary to the said Deed of Trust and such designation allowed Defendants, and each of them, to "securitize" the subject mortgage on the subject property and place a cloud on the title to the subject property and thereby cause injury to the title of the subject property.

126. The said recording of said Deed of Trust therein directly impaired the immediate salability of the property and/or the vendibility of the subject property on the open market in the sum of $390,000, or any other sum.  Further, said recording and subsequent securitization process thereafter caused the devaluation of the subject property to the amount of $150,000 or thereabout.  Said devaluation continues to the present and the value of said property continues to fall from day to day.

127. Plaintiffs file this cause of action after discovery of the facts surrounding the slander of title to subject property within the last several months of the filing date of this Complaint. By law, Plaintiffs can file this cause of action for slander of title within three years of its discovery pursuant to California Code of Civil Procedure Section 338(g). The three-year period does not begin to run until the Plaintiffs could reasonably be

COMPLAINT FOR DAMAGES

expected to discover the existence of the cause of action of slander of title. ***Stalberg v. WesternTitle Ins. Co.*** (1991) 126 Cal. App. 3d 1223. 1230.

128.  The recording of said defective Deed of Trust and subsequent securitization process thereafter have made it necessary for Plaintiffs to retain attorneys and to bring this action to cancel the instrument casting doubt on plaintiffs' title.  Therefore, Plaintiffs is entitled to recover attorney's fees and costs incurred in cancelling the instrument.  The exact amount of such damages is not known to Plaintiffs at this time, and Plaintiffs will move to amend this complaint to state such amount when the same becomes known, or on proof thereof.

129.  Furthermore, the aforementioned recording of said defective Deed of Trust herein, was motivated by fraud on the part of the Defendants in that they knew they were unlawfully circumventing state law, such as the California Civil Code and the California Commercial Code and further they knew the following:

(a) Under the California Commercial Code, MERS was not a proper and lawful entity to be named as beneficiary of said Deed of Trust; it had no standing, never possessed the underlying promissory note of the mortgage, and had no legal authority to act as a beneficiary;

(b) The use of MERS as a beneficiary was for the specific purpose of hiding the true nature of the transaction with the homeowner, that is, a securitization of the mortgage loan in a fraudulent and illegal manner in order to reap millions of dollars from the sale of the MBS certificates backed by homeowner mortgage, such as Plaintiffs subject mortgage and loan;

## COMPLAINT FOR DAMAGES

(c) MERS was created to eliminate the need for the executing and recording of assignment of mortgages and thus avoiding the lawful recording of the Assignments of Beneficiary on loans sold. This saved said Defendants money, manpower and the costs of recording these notes and the assignment of these notes and deeds of trust;

(d) The use of MERS was also designed to "shield" and hide the names and addresses of investors from exposure to liability as a result of lender's "predatory lending practices and misconduct regarding the process of mortgage lending; and

(e) The use of MERS and the subsequent securitization of the loan created a multitude of "equitable lien holders" who were the institutional and private investors who purchased the Mortgage-backed Securities, which included the subject loan herein and other loans as part of the bundled security certificates.

(e) Therefore, the awarding of exemplary and punitive damages is justified by the facts set forth in this cause of action of the Complaint for damages and injunctive relief and Plaintiffs requests said award based according to the proof to be shown at the jury trial of this matter.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## EIGHTH CAUSE OF ACTION

## CANCELLATION OF CLOUD ON TITLE

### (Against ALL Defendants)

130. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

---

## COMPLAINT FOR DAMAGES

131. Defendants claim and assert within the above-described real property an interest which is adverse to Plaintiffs. That interest is based on said Deed of Trust described above and herein, which was recorded on or about November 2, 2006.

132. The said Deed of Trust is invalid and void because it is based on the fraudulent, false, wrongful and illegal acts of the Defendants as fully described herein in this Complaint as set forth above.

133. The claim of the Defendants to the above-described property clouds Plaintiffs' title to the subject property herein, depreciates the said property's market value, and prevents Plaintiffs from enjoying the use of the property and premises in the manner most to Plaintiffs' interest as it owner.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows: general damages according to proof; punitive damages; for the said Deed of Trust to be delivered to the clerk of the court for cancellation and that it be declared void; for damages caused Plaintiffs by the inconvenience and time suffered by Plaintiffs in removing this cloud on Plaintiffs' title; for attorney's fees and costs incurred in removing the cloud on Plaintiffs' title according to proof; for costs of suit incurred herein; and for such other and further relief as the court may deem proper.

# NINTH CAUSE OF ACTION

## QUIET TITLE

### (Against ALL Defendants)

COMPLAINT FOR DAMAGES

134. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

135. The real property that is the subject of this Complaint is located in Sacramento County, California and is commonly known as 4220 Custis Avenue, SACRAMENTO, California [95822] and more particularly described with the legal description set forth in **Exhibit "B"** mentioned above.

136. At all times relevant to this action, Plaintiffs held and now hold an interest in the subject property as a fee simple owner. The basis of Plaintiffs' title is the said deed of trust of the Subject Property herein.   Said Defendants claim an interest adverse to Plaintiffs' interest in the Subject Property, in the form of the deed of trust recorded pursuant to the subject loan herein.

137. Plaintiffs do not know the true names, capacities, basis for liability, or interests in the property of Defendants sued in this action as Does 1 through 100, inclusive, and will amend this complaint when that information is discovered.   At all relevant times, each defendant, including any defendant fictitiously named, claims an interest in the subject Property or was acting as the agent, servant, employee partner, or joint venturer of each other defendant in doing the things alleged and is responsible in some manner for the damages and disputes alleged this complaint.   Plaintiffs are informed and believe, and thereon allege, that there are many unknown parties who claim an actual or equitable lien or interest in the subject property due to certain reasons, including but not limited to the securitization of the mortgage herein

---

## COMPLAINT FOR DAMAGES

138. Plaintiffs seek to quiet title against the following claims of the following named defendants: *Defendants GreenPoint Mortgage, GMAC MORTGAGE LLC FKA GMAC ETS LLC, Regional Trustee Services Corp., Mortgage Electronic Registration System, Inc. [MERS], and DOES 1-100)* Defendants' claims are without any right, and defendants have no right, title, estate, lien or interest in the subject property or any party of it.

139. Plaintiffs do not know the exact names, capacities, or interests in the subject property of certain defendants, which Plaintiffs designates for this action as "all persons unknown", claiming any legal or equitable right, title, estate, lien, or interest in the subject property adverse to Plaintiffs' title, or any cloud on Plaintiffs' subject property. Plaintiffs seek to quiet title in the subject property against the claim of each such defendant, and each such defendant has a right, title estate, lien, or interests in the subject property or any part of it. Plaintiffs will serve this class of defendants by publication as the court allows.

140. Plaintiffs seek to quiet title against all defendants, and each of them, as of the date of filing of this lawsuit and complaint herein. Plaintiffs desire and is entitled to a judicial declaration quieting title in Plaintiffs' name as of the date of the filing of this Complaint herein, or, alternatively, as of the date on which the subject loan was consummated.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

---

**COMPLAINT FOR DAMAGES**

# TENTH CAUSE OF ACTION

# REINSTATE/RESCIND REO SALE

THE REQUEST TO RESCIND ILLEGAL FORECLOSURE /REO SALE IS ATTACHED AS EXHIBIT

ll

HOMEOWNER WAS TOLD THAT THEY WOULD MODIFY LOAN AFTER APPROVING A MAKE

A HOME AFFORDABLE MOD WAS CANCELLED DUE TO BANKRUPTCY. THEN A QUALIFIED

APPROVED FOREBEARANCE AGREEMENT WAS FILED WITH THE BANKRUPTCY JUDGE

PRIOR TO DISCHARGE OF Chapter 7

AFTER MAKING PAYMENT FOR THE SECOND TIME VIA GMAC OUR AGREMMENT WAS

CANCELLED AND EVEN THE EMPLOYEE ACKNOWLEDGE THAT WAS WRONG AND THEY

PROCEEDING AND SOLD OUR HOME WITHOUT FOLLOWING CALIFORNIA CIVIL CODES

AND NEVER GAVE A WILLINGLY PAYING HOMEOWNER AN OPPORTUNITY TO REINSTATE.

WE AVOIDED THE CHAPTER 13 FILING WHICH WOULD HAVE GIVEN US AN OPPORTUNITY

TO KEEP OUR FAMILY HOME. WE WOULF HAVE BORROW THE MONEY IF GIVEN THE

OPPORTUNITY TO REINSTATE PROPERLY. WE HAVE A LEGIMATE HARDSHIP WHICH WAS

PROVEN OCTOBER 2010 WITH A MAKE A HOME AFFORDABLE APPROVED MODIFICATION.

WE ARE DISABLED AND RETIRED WITH THE ABILITY TO MAKE PAYMENTS WHICH WE

DEMONSTRATED TWICE IN THIS PROCESS AND WAS ILLEGALLY AND INADEQUATELY

DISREGARDED. WE SEEK RESTITUTION AN HOME PLACED BACK IN OUR NAME AND

AREASONABLE MODIFICATION.

# RESCISSION OF CONTRACT

**(Civil Code Sections 1689 and 1710; and California Revenue
and Taxation Code Section 23304.5 and Common Law)**

## COMPLAINT FOR DAMAGES

**(Against ALL Defendants)**

141. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

142. On or about November 2006, Plaintiffs entered into an agreement with Defendants, including, but not limited to Doe Defendants, whereby Defendants, and each of them, promised to provide Plaintiffs with an affordable loan and in compliance with state and federal law.

143. Plaintiffs fully performed all terms and conditions they were obligated to do in relation to Defendants, including, but not limited to, Doe Defendants.

144. Defendants breached their agreement with Plaintiffs by failing to exercise reasonable efforts and due diligence as promised, thus failing to provide Plaintiffs with an affordable loan. Defendants also breached their agreement with Plaintiffs by committing wrongful acts, including, but not limited to, intentionally or negligently failing to obtain payment and interest rates as promised, failing to submit an accurate loan application, failing to supervise, failing to provide loan documents for Plaintiffs' review prior to closing, and failing to explain the loan documents to the Plaintiffs. Defendants further breached their duties when they failed to refinance the mortgage as promised; resulting in Plaintiffs' payment increasing substantially shortly after the Loan agreement was signed.

145. Defendants breached their agreement with Plaintiffs further by committing wrongful and fraudulently acts, including, but not limited to, the following: defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiffs and inducing them to sign the mortgage loan documents and to part with their

personal and real property by using a stated income loan.  Defendants made false representations to Plaintiffs regarding material facts, including, but not limited to, interest rates, financing options, availability of refinancing, and Plaintiffs' qualification for this loan, and securitization of the mortgage, at the inception of this transaction, designed to fraudulently induce Plaintiffs to enter into this transaction.  The credit application and/or available W-2's provided by Plaintiffs was enough, in addition to the application itself for Defendant's to know what type of loan should be offered, and what the Plaintiffs could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is <u>statutory fraud</u>.

146.  Plaintiffs is informed and believes, and thereon alleges, that Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.  This loan was fraudulent, by suppression of facts, as set forth in Civil Code Section 1710, with intent to deceive, and to induce Plaintiffs to sign the mortgage/loan documents, because:

(a) it was not clear that borrower will be in negative-amortization from the beginning;

(b) the teaser rate offered for the beginning of the loan ONLY is illusory and never really in effect;

(c) the payment schedule on the disclosure statements of the loan does not identify the kind of payment, i.e., negative-amortization, that borrower is getting;

(d) underwriting a borrower based on a negative-amortization payment is "knowingly" selling a mortgage loan that will fail;

(e) eliminating underwriting standards for evaluating the borrower's ability to pay is "knowingly" selling a mortgage loan that is designed to fail;

(f) bundling the Plaintiffs' mortgage in "mortgage-backed securities"[MBS] into securitized mortgage pools with other mortgages that are based on substandard underwriting standards with no guidelines for borrower's ability to pay is "knowingly" forming MBS structures that will ultimately fail and become worthless due to a multitude of defaulting loans;

(g) establishing insurance in the event of default of the MBS pools and thereafter "shorting the market" on the MBS pools (that is, betting against the success or survival of the MBS pools is "knowingly" establishing the MBS pools for failure while being in a conflict of interest as a fiduciary  investment bank or mortgage servicer or agent; and

(h) arranging for false or inflated appraisals of the MBS pools for the purpose of sale to investors is "knowingly" encouraging the failure of the MBS pools and negatively impacting and damaging the value of Plaintiffs' subject property herein.

(i) creating the subject deed of trust (First and Second) by using MERS as the beneficiary of said deed of trust, knowing that MERS was a domestic and/or foreign corporation suspended by the California Secretary of State and the California Franchise Tax Board as of November 9, 2004 and thereafter as of December 1, 2005, and knowing,

or having reason to know, that said deed of trust was, therefore, a "voidable" contract by rescission under California Revenue and Taxation Code Section 23304.5.

147. In making the above agreement, Plaintiffs relied on the truth of the statements that Defendants named above made orally and in writing. Because those statements were untrue or misleading, Plaintiffs was mistaken about its basic assumptions underlying its obligation to perform under the loan agreement made. This mistake had a material adverse effect on the agreed-upon exchange represented by the Plaintiffs' obligation. Because the Defendants named above were responsible to provide accurate information, the Plaintiffs did not assume, nor does it bear, the risk of the fundamental mistake underlying their decision to enter into the loan agreement set forth herein.

148. Pursuant to California Code of Civil Procedure Section 337.3, an action based upon the rescission of a contract in writing, the time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake. The time does not begin to run until the representation becomes false. Plaintiffs herein discovered the mistake stated herein and the fraud stated herein within the last 180 days of the filing of the complaint herein.

149. The Defendants herein obtained the consent of the Plaintiffs to the loan agreement stated herein by means of their assertion, as facts, of that which was not true, when those Defendants had no reasonable grounds for believing the assertions to be true.

## COMPLAINT FOR DAMAGES

150.  Pursuant to California Civil Code Section 1689 *et seq.,* Plaintiffs are entitled to rescind, and does hereby demand the rescission of the loan agreement stated herein. Plaintiffs allege this cause of action as an alternative remedy to the other causes of action set forth herein. The Plaintiffs offer to restore all benefits that it has received under the loan agreement stated herein and is entitled to recover all consideration, including, but not limited to, monthly payments, costs of closing the loan, property taxes, and related expenses, that the Plaintiffs paid under the terms of the loan agreement.

WHEREFORE, as a result of Defendants' wrongful conduct, Plaintiffs have suffered various damages and injuries according to proof at trial. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

# ELEVENTH CAUSE OF ACTION

# VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.*

## *(Against all Defendants)*

151.  Plaintiffs incorporate herein by reference each and every allegation set forth above.

152.  Plaintiffs are informed and believe, and allege thereon, that Defendants' acts constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code Section 17200 *et seq.* Plaintiffs are informed and believe, and allege thereon, that a person or entity violates the Unfair Competition

Law [UCL], codified as Business & Professions Code Section 17200 et seq., if he, she, it, or they engage in any unlawful, or unfair, or fraudulent, business act.

153. The mortgage market changed in recent years from one in which lenders and mortgage brokers, such as Defendants, originated mortgages for retention in their own portfolios to an unstable market in which lenders, such as Defendants, attempted to generate as many mortgage loans as possible for resale on the secondary mortgage market. The goal for lenders such as Defendants was not only to originate high mortgage loan volumes but also to originate loans with above-market interest rates and other terms which would attract premium prices on the secondary market.

154. In 2004, in an effort to maximize Defendants' profits(including IndyMac Bank), Defendants set out to dramatically increase Defendants' share of the national mortgage market through a deceptive scheme to mass produce loans for sale on the secondary market through the securitization process. Defendants viewed borrowers, including Plaintiffs, as nothing more than the means for producing more loans, originating loans with little or no regard to borrowers' long-term ability to afford them and to sustain homeownership. This scheme was created and maintained with the knowledge, approval and ratification of individual defendants named herein.

155. Defendants implemented this deceptive scheme through misleading marketing practices designed to sell risky and costly loans to homeowners, the terms and dangers of which they did not understand, including by (a) advertising that it was a lender that can be trusted; (b) encouraging borrowers to refinance or obtain purchase money financing with complicated mortgage instruments like hybrid adjustable rate mortgages

COMPLAINT FOR DAMAGES

or payment option adjustable rate mortgages that were difficult for consumers to understand; (c) marketing these complex loan products to consumers by emphasizing the very low initial "teaser" or "fixed" rates while obfuscating or misrepresenting the later steep monthly payments and interest rate increases or risk of negative amortization; and (d) routinely soliciting borrowers to refinance only a few months after Defendants had sold them the loans.

156. Defendants also employed various lending policies to further their deceptive scheme and to sell ever-increasing numbers of loans, including (a) the dramatic easing of underwriting standards; (b) the increased use of low- or no-documentation loans which allowed for no verification of stated income or stated assets or both, or no request for income or asset information at all; (c) urging borrowers to encumber their homes up to 100% (or more) of the assessed value; and (d) placing borrowers in "piggyback" second mortgages in the form of higher interest rate loans while obscuring their total monthly payments obligations.

157. Also to further the deceptive scheme, Defendants created a high-pressure sales environment that propelled its branch managers and loan officers to meet high production goals and close as many loans as they could without regard to borrower ability to repay. Defendants' high-pressure sales environment also propelled loan officers to sell the riskiest types of loans, such as payment option and hybrid adjustable rate mortgages, because loan officers could easily sell them by deceptively focusing borrowers' attention on the low initial monthly payments or interest rates. Defendants also made arrangements with a large network of mortgage brokers, including Defendant brokers

## COMPLAINT FOR DAMAGES

herein, to procure loans for IndyMac Bank and other Defendants, and, through its loan pricing structure, encouraged these brokers to place homeowners in loans with interest rates higher than those for which they qualified, as well as prepayment penalty obligations. This system of compensation aided and abetted brokers(such as Defendant brokers herein) in breaching their fiduciary duties to borrowers by inducing borrowers to accept unfavorable loan terms without full disclosure of the borrowers' options and also compensated brokers(such as Defendant brokers herein) beyond the reasonable value of the brokerage services they rendered.

158. Defendants received numerous complaints from borrowers claiming that they did not understand their loan terms. Despite these complaints, Defendants turned a blind eye to the ongoing deceptive practices engaged in by Defendants' loan officers and loan broker partners(such as Defendant brokers herein), as well as to the hardships created for borrowers by its loose underwriting practices. Defendants cared only about selling increasing numbers of loans at any cost, in order to maximize their profits on the secondary market.

159. Defendants' deceptive scheme had one primary goal, that is, to supply the secondary market with as many loans as possible, ideally loans that would earn the highest premiums. Over a period of several years, Defendants constantly expanded their share of the consumer market for mortgage loans through a wide variety of deceptive practices, undertaken with the direction, authorization, and ratification of individually named defendants herein, in order to maximize its profits from the sale of those loans to the secondary market.

## COMPLAINT FOR DAMAGES

160. While Defendant lenders retained ownership of some of the loans it originated, it sold the vast majority of its loans on the secondary market, either as mortgage-backed securities or as pools of whole loans, all through the process of securitization.

161. Actions of the Defendants are and were unlawful, deceitful and unfair, which are likely to deceive the public, and did deceive the public, and with the intent of deceiving the public, and specifically Plaintiffs herein; and said actions violate the public policy of the State of California and the unfair and unlawful business practice prohibitions of Business and Professions Code section 17200. Plaintiffs' allegations herein are based upon California statutes allowing the bringing of actions based upon violations of any regulation and/or statute (state or federal) where such actions are unfair, unlawful and/or fraudulent.

162. The acts of Defendants that constitute violations of Section 17200 of the Business and Professions Code are those alleged herein as well as the following unlawful, unfair and/or fraudulent business practices:

(a) Unfairly and unlawfully failing and refusing to abide by the terms of the subject promissory note and deed of trust with regard to the subject real property herein;

(b) Failing and refusing to comply with Cal. Civ. Code section 2923.5 and 2923.6 in that Defendants failed and refused and continue to fail and refuse to provide proper notice to Plaintiffs as required by law and continue to fail and refuse to negotiate in good faith with Plaintiffs as required by statute;

COMPLAINT FOR DAMAGES

(c) Failure to provide notice to Plaintiffs as required by Cal. Civ. Code section 1916.7;

(d) Failure to comply with finance charge disclosures as required by Cal. Fin. Code and other rules and regulations that require such disclosure;

(e) Failure to comply and follow fair debt collection practice rules and regulations;

(f) By making materially false, fictitious or fraudulent statements or representations during the loan application, processing and closing stage;

(g) Failure to comply with and ensure that loan terms and underwriting standards are consistent with prudent lending practices, including considerations of a borrower's repayment capacity, inclusive of the requirement that an institution's analysis of a borrower's repayment capacity should include an evaluation of their ability to repay the debt by final maturity at the fully amortizing repayment schedule;

(h) Violating the provisions of California Financial Code section 50204, which prohibits a licensee from engaging in fraudulent home mortgage underwriting practices;

(i) Violation of California Financial Code section 50204(i), which prohibits overcharging of *per diem* at closing.

(j) "Securitizing" Plaintiffs' loan without disclosure to Plaintiffs at the execution of the loan agreement and making false and untrue statements in connection with the securitization process, in order to market Plaintiffs' loan and to make large profits to the detriment of the Plaintiffs' interest in the subject real property.

---

**COMPLAINT FOR DAMAGES**

(k) Failure to comply with Section 3301 of the California Commercial Code in that MERS is not a proper party/entity or business in good standing(pursuant to the California Corporations Code) to serve as beneficiary of the subject Deed of Trust and has no standing to foreclose on the subject Deed of Trust, thereby violating state law of California.

(l) The use of false, untrue and misleading statements by Defendants in order to market the so-called Mortgage-backed Securities[MBS], which included Plaintiffs' loan along with many other unsuspecting homeowners. Examples of material facts that were misleading and untrue {and therefore, fraudulent] related to the following: (1) the percentage of equity that borrowers had in their homes, (2) the number of borrowers who actually lived in the house that secured their loans, (3) the credit scores of the borrowers, (4) the business practices of the lenders that made the loans, and (5) the appraisals of the properties that secured the mortgage loans that were biased upward and fraudulently and untruthfully prepared to support the false loan-to-value ratios created by Defendants.

163. Defendants' actions as complained of herein demonstrate a pattern and practice of unlawful and unfair business practices perpetrated upon a large portion of the consuming public, inclusive of Plaintiffs herein. Such pattern and practice is so grievous that it constitutes an unconscionable act and violates the provisions of California Civ. Code section 1770(a) (19)  in that Defendants are guilty of inserting unconscionable and unlawful terms and conditions within a loan contract and said deed of trust inclusive of the contract that is the subject of this action.

## COMPLAINT FOR DAMAGES

164. As a result of Defendants' wrongful conduct, Plaintiffs have suffered various damages and injuries according to proof at trial.

165. Plaintiffs seek injunctive relief enjoining Defendants, individually and collectively, from engaging in the unfair business practices described herein.

166. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

# TWELFTH CAUSE OF ACTION

## CIVIL CONSPIRACY

### *(Against all Defendants)*

167. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

168. On or about the year 2001 and thereafter, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct continue to the present and are ongoing. At this time, there is no last act of the conspiracy yet.

169. Further, Defendants, and each of them engaged in a conspiracy with the following objectives:

170. to implement a mini-Ponzi scheme; putting Plaintiffs and many other unsuspecting homeowners in California into teaser-rate loans which required expensive and equity stripping refinancing which ultimately carried rates Plaintiffs could never pay (thus gambling on ever increasing property values);

(a) to securitize the mortgage loans into Mortgage-backed securities, causing the MBS structures to artificially inflate by use of phony appraisals and unconfirmed values used to "hype" the securities for sale to unsuspecting investors who were relying on Defendants' false representations of value;

(b) to sell these MBS pools, knowing that they were substandard mortgages, on the secondary market, take out insurance on the MBS pools in case the MBS pools fail and then "bet against" the MBS pools (that is, "short" the market) knowing that they were designed to fail;

(c) to make false representations about the value of the MBS pools in order to create a market frenzy to increase the value of the MBS pools, allow the value to inflate dramatically, knowing that it would eventually fail and cause the value of the homeowners' homes to decline by 50% or more, and then foreclose on the properties or short sell the properties and thereby make a profit of millions of dollars on the devalued property while getting subsidized by the US government by means of a bank bailout; and

(d) to create a deed of trust on the subject property and not disclose the true beneficiary of the deed of trust, but instead stating MERS as the beneficiary, when MERS was not in good standing in California and is a suspended corporate entity with no power to transact business in California

---

**COMPLAINT FOR DAMAGES**

171. In connection with the application for and consummation of the subject mortgage loan in this Complaint, and the securitization of the subject loan into MBS pools as described above [See also: **Exhibit " A ,"** set forth above].

172. Plaintiffs is informed and believes, and alleges thereon, that Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff(s).

173. Plaintiffs are informed and believe, and thereon allege, that Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and the detriment to the Plaintiffs.

174. The actions of Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

175. As a direct and proximate result of the actions of the Defendants, and each of them, in combination resulting in fraud and breaches of fiduciary duties, Plaintiffs suffered damages thereon.

176. Plaintiffs thus demands an award of actual, compensatory, and punitive damages in accordance with California Civil Code Section 3294 and relevant California case law [**e.g.**, *Bertero vs. National General Corp. (1974) 13 Cal. 3d 43, 65,* basing punitive damages on the financial condition of Defendants]

WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, as set forth herein.

## THIRTEEN CAUSE OF ACTION

## COMPLAINT FOR DAMAGES

## INJUNCTIVE RELIEF

### (Against ALL Defendants)

177.  Plaintiffs incorporate herein by reference each and every allegation set forth above.

178.  Based on the actions by the Defendants, individually and collectively, herein stated,   Defendants should be enjoined from foreclosing on Plaintiffs' subject property on the following basis:

(a) Plaintiffs will be subjected to irreparable harm and loss of the subject real property herein described above, unless the court issues a temporary and preliminary injunction stopping the pending foreclosure initiated by Defendants and maintaining the status quo until the matter is resolved through trial or other means.  As the subject real property herein is unique, damages *per se* will not adequately compensate the Plaintiffs in the event of a recovery on their behalf.  A court may issue provisional injunctive relief when Plaintiffs as in this case, allege acts that violate a trust obligation.  Calif. Code of Civil Proc. 526(a) (7); violate another party's rights in the subject of the action and tend to render final judgment ineffectual. Calif. Code of Civil Proc.  526(a) (3); or produces injury for which money damages are inadequate or extremely difficult to ascertain.  Calif. Code of Civil Proc. 526(1) (4)-(5). Both irreparable injury and the inadequacy of money damages are supported by the real property being alleged as unique.  See:  Calif. Civ. Code section 3387; *Wheat v. Thomas* (1930) 209 Cal. 306; *United Sav. & Loan Association v. Reeder Dev. Corp.* (1976) 57 Cal. App.3d 282.   It is the subject property

of this complaint and lawsuit that Plaintiffs seek to hold as the personal residence for their family.

(b) None of the Defendants attempting to singularly or collectively foreclose on the subject real property described herein is the real party in interest in the foreclosure proceeding nor can they be the real party in interest in defending this action, because the mortgage note has not been properly transferred from one entity to the next as required by the Uniform Commercial Code and the California Commercial Code.  Only the real party in interest can prosecute or defend a lawsuit and, moreover, only the real party in interest can proceed with a non-judicial foreclosure.

(c) Plaintiffs are informed and believe and thereon allege, that none of the Defendants. including MERS, are the true holders of the note on the subject real property herein described.  Therefore, none of the Defendants, and especially MERS,  has the right to proceed with a foreclosure on the property; and the Defendants, and specifically MERS and Regional Trustee Services Corporation, should be enjoined from proceeding with a foreclosure without first producing the original mortgage/promissory note, complying with the provisions of the California Civil Code and Commercial Code, and verifying that MERS has good standing in the State of California to participate in the business activity of serving as a beneficiary of a Deed of Trust and foreclosing on a Deed of Trust.

(d) Further, Plaintiffs allege that MERS is the beneficiary of record and has no standing to foreclose on the subject property by the terms and conditions of the deed of trust and further has its corporate powers to transact business in California

## COMPLAINT FOR DAMAGES

SUSPENDED as of November 2009 and thereafter as of December 1, 2005, and thereby has no ability to perform any actions within the state of California as set forth herein and above.

(e) On information and belief, Plaintiffs allege that neither GREENPOINT MORTGAGE, GMAC MORTGAGE SERVICING, MERS is the real property in interest, because Defendants have illegally and improperly attempted to "split" the control and ownership of the deed of trust and the promissory note (in violation of California law, specifically the California Civil Code and Commercial Code), and sold or otherwise transferred the original mortgage/promissory note that represents the contract between Plaintiffs and the original note holder. Plaintiffs is informed and believes, and thereon alleges, that the original note has been sold into what is known as the "secondary market" of the real estate industry and has been securitized through "pooling trusts" and "pooling service" bonds and/or securities whereby several investors have purchased the said note securing the property such that it is difficult or impossible to determine who is the true note holder, beneficiary, mortgagee or owner of the right  to foreclose on the property or to sell the property with clear title in the event of a foreclosure.  Defendants should be required to produce the original mortgage note securing the property as collateral for any debt Defendants contend Plaintiffs owes in order to determine to whom Plaintiffs owes any money to, if anybody.

(f) Defendants, and each of them, have failed to make good faith reasonable efforts to attempt to make a mortgage workout plan between Plaintiffs and Defendants, pursuant to California Civil Code Sections 2923.5 and 2923.6, pursuant to state and

---

## COMPLAINT FOR DAMAGES

federal government programs, all of which would have worked out to Defendants" advantage and given them adequate protection of their interest in the property. Such failure and refusal to act in good faith by Defendants is manifested by:

(1) Failure to follow California Civil Code section 2924 et seq. in dealing with Plaintiffs;

(2) Failure to follow the provisions of California Civil Code section 2923.6; and

(3) Failure and refusal to comply with the fair debt collection practice laws of the State of California.

(4) Fraudulently and illegally using MERS, a foreign corporation suspended in November 2004, as the beneficiary of the subject Deed of Trust stated herein.

(5) Participation in fraudulent and illegal conduct as set forth in this Complaint.

179. Injunctive relief is proper in this case as Plaintiffs, unless injunctive relief is provided, will suffer irreparable harm by the loss of the subject real property.

180. In addition to injunctive relief, Plaintiffs seek disgorgement of profits in excessive interest, costs and fees assessed Plaintiffs by Defendants in connection with the refinancing of the loan on the subject property in this action, and the fraudulent and illegal securitization of the subject loan herein.

181. Plaintiffs seek an award of reasonable attorneys, fees and costs as deemed appropriate by the court.

**DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

## COMPLAINT FOR DAMAGES

Plaintiffs demand a trial by jury:

**WHEREFORE**, Plaintiffs prays for judgment and order against Defendants, and each of them, as follows:

1.      That judgment be entered in Plaintiffs' favor and against Defendants, and each of them;

2.      For an order requiring Defendants to show cause, if any, why they should not be enjoined forth herein, during the pendency of the action;

3.      For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collection on the subject Loan and from causing the subject property to be sold, assigned or transferred to a third party;

4.      For a temporary restraining order, preliminary and permanent injunction stopping and restraining Defendants from proceeding with any notice of sale of the property and to restrain Defendants from pursuing foreclosure upon the subject real property herein, until the claims herein have litigated and an adjudication obtained by the parties;

5.      For a preliminary and permanent injunction against all Defendants ordering all foreclosure proceedings cease until further order of the court;

6.      For an order stating that Defendants are to cease and desist in any unfair business practices described herein;

7.      For order quieting title to the subject real property of this action against all Defendants;

---

**COMPLAINT FOR DAMAGES**

8.     For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices;

9.     For compensatory and statutory damages, attorney's fees and costs according to proof at trial;

10.     For exemplary (punitive) damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct in accordance with California Civil Code Section 3294.

11.     For such other and further relief as the Court may deem just and proper.

DATED:  AUGUST 23, 2010                           Respectfully submitted,

                                                                    *Mildred Coleman*
                                                  DWIGHT AND MILDRED COLEMAN

## VERIFICATION

We, DWIGHT D. COLEMAN AND MILDRED R. COLEMAN, are the Plaintiffs in the above-entitled action. We have read the foregoing COMPLAINT FOR DAMAGES and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe it to be true.

---

## COMPLAINT FOR DAMAGES

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at SACRAMENTO, California on the 23RD day of AUGUST 2011.

SIGNATURE: DWIGHT D COLEMAN      SIGNATURE: MILDRED R COLEMAN

**COMPLAINT FOR DAMAGES**



# PFG Legal Systems

March 21, 2010

Borrowers:                Dwight D. Coleman and Mildred R. Coleman
Property Address:         4220 Custis Avenue, Sacramento, CA 95822
Originating Loan Number:  0307727425

This notice shows the violations committed on the above-referenced mortgage loan based on federal and state laws, including, but not limited to, the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ('RESPA'), California Unfair Deceptive Business Practices Act, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Code Section 1688, 12 CFR Section 226.23(3), Rescission Pursuant to California Code of Civil Procedure Section 337.3, and many others.

## I.  VIOLATION OF TRUTH-IN-LENDING ACT ("TILA")

The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them." If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the Borrower of the variable rate feature of the loan. Additionally, federal courts have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."[1]

•       The early disclosures required by TILA were not provided timely and accurately, including a good faith estimate and notice of borrowers' right to rescind the mortgage loan.

•       Based upon a review of the finance charge and annual percentage rate for compliance with TILA, the APR was understated by more than 5% and the finance charge was understated by more than $100.00. This violates TILA and provides for the right to rescind. As you may know, in the event of a foreclosure, the consumer may exercise the right of recession if the disclosed finance charge *is understated by more than $100.00.*[2]

•       The payment schedule on the TILA Disclosure Statement does not accurately reflect the terms of the Note. Nor are the monthly payment schedules listed individually throughout the 360

---

[1]  *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980); and *Barnes v. Fleet National Bank*, 370 F. 3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman*).

[2]  12 C.F.R. Section 226.18(d).

term loan.

- In this transaction, Lender failed to provide information of payment frequency. TILA imposes an explicit requirement that a lender include "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments in its Disclosure Statement to the Borrower. 15 U.S.C Section 1638(a) (6); see also: 12 C.F.R. Section 226.18(g) (1) There is no statement of "monthly," or "bi-weekly." Quite to the contrary, on the documents' face, it appears as though the total of payments in each category is due in total on one single date. The question is whether TILA is satisfied if the form provides only enough information from which the consumer might infer either the due dates or the payment period. TILA"s purpose is achieved by promoting uniformity in credit documents. Atypical terms and forms can confuse borrowers, leading them to agree to credit products that they might have rejected had they understood them properly. "When it comes to TILA, "hyper-technicality reigns. . . .' *Hamm v. Ameriquest Mortgage Co., No. 05 C 227 N.D. Ill. (2008).* This court ruling was made regarding the manner of payment, included in the Lender's TILA disclosure as required by 15 U.S.C. Section 1638(6), be included among the material terms requiring conspicuous disclosure.

- The "teaser" rate of 2.5% contained in the Note was illusory, meaning that it was never in effect.

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

## II.     VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

The broker appears to have received huge compensation for obtaining this loan, approximately 4% of the total loan amount, in addition to other suspect fees and overcharges such as Yield Spread Premium that was never identified on the settlement statement.

These amounts were not properly disclosed, are highly suspect, and do not represent the reasonable value of services performed. These amounts are, therefore, subject to the treble damages provision in RESPA, in addition to the recovery of attorney's fees and costs of litigation.

## III.   VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE[3], BREACH OF FIDCUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

### A.   Underwriting Standards Were Ignored; Borrower Qualification Based on Value of Collateral, Rather than Ability to Repay the Loan

---

[3] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. Violations of specific code sections 10240-10248.3 10241

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by obtaining proper income verification, such as pay stubs, 1040's, W-2's, 1099s and/or a Verification of Employment or Income on the borrowers.

If an underwriter had evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed, bank statements, and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of total repayment not just monthly.

If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further, this loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, Borrower has been seriously damaged.

### B.  Predatory Lending

The Office of the Comptroller of the Currency ("OCC") defines Predatory Lending as any lien secured by real estate which shares well-known common characteristics that result in unfair and deceptive business practices. Some those characteristics here include:

- This loan requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

- This loan is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower QUALIFIED and is based on a loan application, which is inappropriate for the borrower.

- This loan was marketed in a way, which fails to fully disclose all material terms and includes terms and provisions, which are unfair, fraudulent or unconscionable.

- This loan was marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan and

- The loan contained terms whereby the borrower can never realistically repay the loan.

- The loan is based on a loan application that is inappropriate for the borrowers because it utilizes a Stated Income.

- This loan is symptomatic of "bait and switch" tactics and targeting of borrowers to place them in an inappropriate loan.

- Finally, this loan included a negative-amortization payment feature, which was not adequately explained and/or disclosed to borrower.

## C. <u>Breach of Fiduciary Duty</u>

Both lender and broker have a fiduciary responsibility to the borrower. The fiduciary duty of the broker (i.e., "duty of trust") is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

The fiduciary duty of the broker, as agent for the lender, is the same – to deal with the consumer in good faith, educate the borrowers about loan programs, other options are available to the borrowers, perform their own diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

Here, the Borrower was placed into the current loan product without regard for the ability to repay the loan, likely, they would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur.

In addition, the above-described acts were a breach of the implied covenant of good faith and fair dealing.

## IV. <u>VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 1916.5 AND 1916.7</u>

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender.

First, the law requires certain procedural safeguards to protect the borrower, such as receipt of specific disclosure notices from the lender. Civil Code Section 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

> *"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY"...*

This disclosure <u>was not provided</u> to the borrowers at any time during the processing of this loan, nor was <u>any alternative loan products</u> offered to the borrowers.

In addition, the lender must notify borrowers of any changes in the interest rate and monthly payment of a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and violated the law.

These California Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

term loan.

• In this transaction, Lender failed to provide information of payment frequency. TILA imposes an explicit requirement that a lender include "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments in its Disclosure Statement to the Borrower. 15 U.S.C Section 1638(a) (6); see also: 12 C.F.R. Section 226.18(g) (1) There is no statement of "monthly," or "bi-weekly." Quite to the contrary, on the documents' face, it appears as though the total of payments in each category is due in total on one single date. The question is whether TILA is satisfied if the form provides only enough information from which the consumer might infer either the due dates or the payment period. TILA"s purpose is achieved by promoting uniformity in credit documents. Atypical terms and forms can confuse borrowers, leading them to agree to credit products that they might have rejected had they understood them properly. "When it comes to TILA, "hyper-technicality reigns. . . .' *Hamm v. Ameriquest Mortgage Co., No. 05 C 227 N.D. Ill. (2008)*. This court ruling was made regarding the manner of payment, included in the Lender's TILA disclosure as required by 15 U.S.C. Section 1638(6), be included among the material terms requiring conspicuous disclosure.

• The "teaser" rate of 2.5% contained in the Note was illusory, meaning that it was never in effect.

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

## II.   VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

The broker appears to have received huge compensation for obtaining this loan, approximately 4% of the total loan amount, in addition to other suspect fees and overcharges such as Yield Spread Premium that was never identified on the settlement statement.

These amounts were not properly disclosed, are highly suspect, and do not represent the reasonable value of services performed. These amounts are, therefore, subject to the treble damages provision in RESPA, in addition to the recovery of attorney's fees and costs of litigation.

## III.   VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE[3], BREACH OF FIDCUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

### A.   Underwriting Standards Were Ignored; Borrower Qualification Based on Value of Collateral, Rather than Ability to Repay the Loan

---

[3] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. Violations of specific code sections 10240-10248.3 10241

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by obtaining proper income verification, such as pay stubs, 1040's, W-2's, 1099s and/or a Verification of Employment or Income on the borrowers.

If an underwriter had evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed, bank statements, and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of total repayment not just monthly.

If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further, this loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, Borrower has been seriously damaged.

## B.  Predatory Lending

The Office of the Comptroller of the Currency ("OCC") defines Predatory Lending as any lien secured by real estate which shares well-known common characteristics that result in unfair and deceptive business practices. Some those characteristics here include:

- This loan requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

- This loan is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower QUALIFIED and is based on a loan application, which is inappropriate for the borrower.

- This loan was marketed in a way, which fails to fully disclose all material terms and includes terms and provisions, which are unfair, fraudulent or unconscionable.

- This loan was marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan and

- The loan contained terms whereby the borrower can never realistically repay the loan.

- The loan is based on a loan application that is inappropriate for the borrowers because it utilizes a Stated Income.

- This loan is symptomatic of "bait and switch" tactics and targeting of borrowers to place them in an inappropriate loan.

- Finally, this loan included a negative-amortization payment feature, which was not adequately explained and/or disclosed to borrower.

### C. **Breach of Fiduciary Duty**

Both lender and broker have a fiduciary responsibility to the borrower. The fiduciary duty of the broker (i.e., "duty of trust") is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

The fiduciary duty of the broker, as agent for the lender, is the same – to deal with the consumer in good faith, educate the borrowers about loan programs, other options are available to the borrowers, perform their own diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

Here, the Borrower was placed into the current loan product without regard for the ability to repay the loan, likely, they would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur.

In addition, the above-described acts were a breach of the implied covenant of good faith and fair dealing.

## IV. VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 1916.5 AND 1916.7

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender.

First, the law requires certain procedural safeguards to protect the borrower, such as receipt of specific disclosure notices from the lender. Civil Code Section 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

*"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY"...*

This disclosure was not provided to the borrowers at any time during the processing of this loan, nor was any alternative loan products offered to the borrowers.

In addition, the lender must notify borrowers of any changes in the interest rate and monthly payment of a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and violated the law.

These California Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

## V.  SECURITIZATION & MORTGAGE ELECTRONIC REGISTRATION SYSTEM

Mortgage Electronic Registration System ("MERS") has been named the beneficiary for this loan.  MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record.  This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold.  This saved the lenders money in manpower and the costs of recording these notes.  It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans.  By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

Since neither MERS nor the servicer have a beneficial interest in the mortgage(promissory) note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the assignment in the name of MERS, the assignment(s) executed by the MERS employee(s) is/are illegal.[4]  The actual owner of the note has not executed the assignment to the new party.  An assignment of a mortgage in the absence of the assignment and physical delivery of the mortgage note will result in a nullity.

It must also be noted that the lender or other holder of the note registers the loan on MERS.  Thereafter, all sale or assignments of the mortgage loan are accomplished electronically under the MERS system.  MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the mortgage note.

The existence of MERS constitutes numerous violations of the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices, due to the conflicting nature and identity of the servicer and the beneficiary.  Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.  And, finally, there was clearly fraudulent conduct to conceal material facts to the borrower(s).

## VI.  VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1688

Based on the above facts and information, Borrowers were repeatedly subjected to fraudulent activities by the Lender and its agents.  Further, Borrowers never received notices of their Right to Cancel.  Each borrower should have received two copies each of the Notice of Right to Cancel.  Therefore the Borrowers have an extended 3-year right to cancel this loan in accordance with 12 C.F.R. Section 226.23 (3), Truth Lending Act..

Pursuant to California Code of Civil Procedure Section 337.3, an action based upon the rescission of a contract in writing, the time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred.  Where the ground for rescission is fraud or mistake,

---

[4] Sobel v. Mutual Development, Inc., 313 So. 2d 77 (1st DCA Fla 1975)

the time does <u>NOT</u> begin to run until discovery by the aggrieved party of the facts constituting the fraud or mistake. The time does <u>NOT</u> begin to run until the representation becomes false. Clearly, in this case, the Borrowers had <u>no knowledge</u> of the fraudulent activities of the Lender until recently, that is, within the last 30 days before sending this letter.

The federal doctrine of fraudulent concealment operates to toll the "statute of limitations" where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on this part.[5]

---

[5] Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348 (1874); <u>see</u>: Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127 (1st Cir. 1987).

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

Sacramento County Recorder
Craig A. Kramer, Clerk/Recorder
BOOK **20100608** PAGE **0475**
Check Number **5668**
Tuesday, JUN 08, 2010  9:03:27 AM
Ttl Pd    $21.00          Nbr-0006375102

TJH/12/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: GM-217954-C     Loan No.: 0307727425
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$9,051.39** as of **6/3/2010**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

TS NO.: GM-217954-C          LOAN NO.: 0307727425

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated  **10/19/2006** , executed by  **DWIGHT DAVID COLEMAN AND MILDRED R. COLEMAN, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. A CORPORATION**, as beneficiary, recorded **11/2/2006**, as Instrument No. , in Book **20061102**, Page **0120**,  of Official Records in the Office of the Recorder of **Sacramento** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of  **$390,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 2/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.**

Dated: 6/3/2010

ETS Services, LLC as Agent for Beneficiary

BY: _____

**Diana Kilisian**
**TRUSTEE SALE OFFICER**

T.S. No. **GM-217954-C**
Loan No. **0307727425**

Date: 9/7/2010

**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**Sale Line:  714-730-2727**

**Ileanna Petersen, TRUSTEE SALE OFFICER**

Branch :OCS,User :O530    **11UD05069** Station ID :S6H9

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC**

AND WHEN RECORDED MAIL TO:
**GMAC MORTGAGE, LLC**
**FKA GMAC MORTGAGE CORPORATION**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON, PA 19034**

Forward Tax Statements to
the address given above

Sacramento County Recorder
Craig A. Kramer, Clerk/Recorder
BOOK 20110512 PAGE 0363
Check Number 8536
Thursday, MAY 12, 2011  8:54:56 AM
Ttl Pd    $21.00     Nbr-0005585671

TMH/74/1-2

SPACE ABOVE LINE FOR RECORDER'S USE

TS # GM-217954-C
LOAN # 0307727425     INVESTOR #: 123115867
TITLE ORDER # 100340372-CA-MSI

## TRUSTEE'S DEED UPON SALE

APN 018-0051-023-0000     TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $437,338.04
The Amount Paid By The Grantee was $78,200.00
Said Property Is In The City Of SACRAMENTO, County of Sacramento

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

**Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

## GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of Sacramento, State of California, described as follows:

**LOTS 194 AND 195 OF TERMINAL TRACT, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, ON NOVEMBER 12, 1920 IN BOOK 11 OF MAPS, MAP NO. 14.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by DWIGHT DAVID COLEMAN AND MILDRED R. COLEMAN, HUSBAND AND WIFE AS JOINT TENANTS as Trustor, dated 10/19/2006 of the Official Records in the office of the Recorder of Sacramento, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on 11/02/2006 , instrument number  (or Book 20061102, Page 0120)  of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

**[Page 1 of 2]**

SACRAMENTO, CA  Document:FD 20110512.363                    Page:1 of 2

Printed on:5/23/2011 9:52 AM

**EXHIBIT 1**

## TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# GM-217954-C
Loan # 0307727425
Title Order # 100340372-CA-MSI

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **03/30/2011**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$78,200.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: S-10-11

Executive Trustee Services, LLC dba ETS Services, LLC

By: _____
Luis Rodriguez, Authorized Officer

State of California    } S.S.
County of Los Angeles   }

On S 10 11 before me, Shanon De'Arman-Davis Notary Public, personally appeared Luis Rodriguez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)
Shanon De'Arman-Davis

SHANON DE'ARMAN-DAVIS
Commission # 1783309
Notary Public - California
Los Angeles County
My Comm. Expires Dec 3, 2011

[Page 2 of 2]

EXHIBIT 1

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc., solely as
nominee for GreenPoint Mortgage Funding, Inc.

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700

APN: 018-0051-023-0000
MIN: 100013800908730357

4 966349

**Sacramento County Recorder**
**Craig A. Kramer, Clerk/Recorder**
**BOOK 20110105 PAGE 0944**

Check Number  9884
**Wednesday, JAN 05, 2011  1:56:28 PM**
Ttl Pd    $21.00      Nbr-0006645162

**JLW/14/1-2**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to GMAC
Mortgage, LLC all beneficial interest under that certain Deed of Trust dated October 19, 2006,
executed by Dwight David Coleman and Mildred R. Coleman, Husband and Wife as Joint Tenants,
to Marin Conveyancing Corp. as trustee, for Mortgage Electronic Registration Systems, Inc., solely
as nominee for GreenPoint Mortgage Funding, Inc., as beneficiary, and recorded as Book 20061102
and Page 0120 on November 2, 2006, in the State of California, Sacramento County Recorder's
Office.

Dated: _December 20, 2010_

**Mortgage Electronic Registration Systems, Inc., solely**
**as nominee for GreenPoint Mortgage Funding, Inc.**
By: _____
Name: **Donald T. Dempsey**
Title: **Assistant Secretary**

State of PA          )
                     ) ss.
County of Montgomery )
On _12/20/10_ before me, _Jahirah Y Sweet_, a Notary Public in
and for said state, personally appeared _Donald T. Dempsey_, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___PA___ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_Jahirah Y Sweet_
Notary Public

(This Area for Official Notary Seal)

NOTARIAL SEAL
JAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

000001-1122468645-M

**RECORDING REQUESTED BY:**

**LSI TITLE COMPANY, INC.**

**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600**

Sacramento County Recorder
Craig A. Kramer, Clerk/Recorder
BOOK **20100608** PAGE **0474**

Check Number **5658**
Tuesday, JUN 08, 2010  9:03:27 AM
Ttl Pd  $18.00      Nbr-0006375094

**TJH/12/1-1**

TS NO : GM-217954-C
LOAN NO : 0307727425

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, DWIGHT DAVID COLEMAN AND MILDRED R. COLEMAN, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, MARIN CONVEYANCING CORP. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. A CORPORATION was the original Beneficiary under that certain Deed of Trust dated 10/19/2006 and recorded on 11/2/2006 as Instrument No. , in Book 20061102, Page 0120 of Official Records of Sacramento County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided;

NOW, THEREFORE, the undersigned desires to substitute Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated : 6/3/2010**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

**DONNA FITTON, ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On 6/3/2010 before me, Dee C. Ortega Notary Public, personally appeared Donna Fitton who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

**MARTIN LAW AND ASSOCIATES**
ATTORNEYS AT LAW

HIRAM M. MARTIN, ESQ., J.D., "GENERAL PARTNER"
          *LICENSED IN CALIFORNIA & WASHINGTON, D.C.
*MAILING ADDRESS*
8139 SUNSET AVENUE # 141
FAIR OAKS, CA 95628-5131
TEL: (916) 363-1212 FAX: (916) 363-1213
EMAIL: hirammartin@ix.netcom.com

LOS ANGELES OFFICE
BRICE'S PROFESSIONAL BLDG.
10451 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90003
LAS VEGAS OFFICE
5348 VEGAS DRIVE
Las Vegas, NV 89108

### *Via USPS Priority Mail*

March 21, 2010

GMAC Mortgage
3451 Hammond Avenue
Waterloo, IA 50704-0780

ATTN: Correspondence Research

### Re: **DEMAND AND NOTICE OF RESCISSION**

Property Address:        4220 Custis Avenue, Sacramento, CA 95822
Originating Loan Number:  0307727425
Borrowers:               Dwight D. Coleman and Mildred R. Coleman

Dear Sirs/Madames:

This notice will serve as a **NOTICE TO RESCIND** the above-referenced mortgage loan based on your violations of the each of the following federal and state laws, including, but not limited to, the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ('RESPA"), California Unfair Deceptive Business Practices Act, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Code Section 1688, 12 CFR Section 226.23(3), Rescission Pursuant to California Code of Civil Procedure Section 337.3, and many others.

Please be advised that the security interest in the above reference property is now **VOID** pursuant to this notice. Once the loan is rescinded, the security interest or lien becomes automatically void, by operation of law. 15 USC §1635(b); Reg Z §§226.15(d) (1), 226.23(d) (1). The mortgage (promissory) note also is voided. The lender's interest in the property is "automatically negated, regardless of its status and whether or not it was recorded or perfected." Official Staff Commentary §§226.15(d) (1)-1, 226.23(d) (1)-1.

You now have twenty (20) days to return all payments made on this loan and to do your part to terminate the security interest in the subject real property. Upon compliance with the above, we will be contacting you to discuss the tender of the reduced payoff amount subject to offset all damages and costs.

# I. VIOLATION OF TRUTH-IN-LENDING ACT ("TILA")

The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them." If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the Borrower of the variable rate feature of the loan. Additionally, federal courts have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."[1]

- The early disclosures required by TILA were not provided timely and accurately, including a good faith estimate and notice of borrowers' right to rescind the mortgage loan.

- Based upon a review of the finance charge and annual percentage rate for compliance with TILA, the APR was understated by more than 5% and the finance charge was understated by more than $100.00. This violates TILA and provides for the right to rescind. As you may know, in the event of a foreclosure, the consumer may exercise the right of recession if the disclosed finance charge *is understated by more than $100.00.*[2]

- The payment schedule on the TILA Disclosure Statement does not accurately reflect the terms of the Note. Nor are the monthly payment schedules listed individually throughout the 360 term loan.

- In this transaction, Lender failed to provide information of payment frequency. TILA imposes an explicit requirement that a lender include "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments in its Disclosure Statement to the Borrower. 15 U.S.C Section 1638(a) (6); see also: 12 C.F.R. Section 226.18(g) (1) There is no statement of "monthly," or "bi-weekly." Quite to the contrary, on the documents' face, it appears as though the total of payments in each category is due in total on one single date. The question is whether TILA is satisfied if the form provides only enough information from which the consumer might infer either the due dates or the payment period. TILA"s purpose is achieved by promoting uniformity in credit documents. Atypical terms and forms can confuse borrowers, leading them to agree to credit products that they might have rejected had they understood them properly. "When it comes to TILA, "hyper-technicality reigns. . . .' *Hamm v. Ameriquest Mortgage Co., No. 05 C 227 N.D. Ill. (2008).* This court ruling was made regarding the manner of payment, included in the Lender's TILA disclosure as required by 15 U.S.C. Section 1638(6), be included among the material terms requiring conspicuous disclosure.

- The "teaser" rate of 2.5% contained in the Note was illusory, meaning that it was never in effect.

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

---

[1] *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980); and *Barnes v. Fleet National Bank*, 370 F. 3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman*).

[2] 12 C.F.R. Section 226.18(d).

## II.   VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

The broker appears to have received huge compensation for obtaining this loan, approximately 4% of the total loan amount, in addition to other suspect fees and overcharges such as Yield Spread Premium that was never identified on the settlement statement.

These amounts were not properly disclosed, are highly suspect, and do not represent the reasonable value of services performed. These amounts are, therefore, subject to the treble damages provision in RESPA, in addition to the recovery of attorney's fees and costs of litigation.

## III.   VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE[3], BREACH OF FIDCUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

### A.   Underwriting Standards Were Ignored; Borrower Qualification Based on Value of Collateral, Rather than Ability to Repay the Loan

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by obtaining proper income verification, such as pay stubs, 1040's, W-2's, 1099s and/or a Verification of Employment or Income on the borrowers.

If an underwriter had evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed, bank statements, and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of total repayment not just monthly.

If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further, this loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, Borrower has been seriously damaged.

---

[3] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. Violations of specific code sections 10240-10248.3 10241

## B.  Predatory Lending

The Office of the Comptroller of the Currency ("OCC") defines Predatory Lending as any lien secured by real estate which shares well-known common characteristics that result in unfair and deceptive business practices.  Some those characteristics here include:

- This loan requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

- This loan is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower QUALIFIED and is based on a loan application, which is inappropriate for the borrower.

- This loan was marketed in a way, which fails to fully disclose all material terms and includes terms and provisions, which are unfair, fraudulent or unconscionable.

- This loan was marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan and

- The loan contained terms whereby the borrower can never realistically repay the loan.

- The loan is based on a loan application that is inappropriate for the borrowers because it utilizes a Stated Income.

- This loan is symptomatic of "bait and switch" tactics and targeting of borrowers to place them in an inappropriate loan.

- Finally, this loan included a negative-amortization payment feature, which was not adequately explained and/or disclosed to borrower.

## C.  Breach of Fiduciary Duty

Both lender and broker have a fiduciary responsibility to the borrower.  The fiduciary duty of the broker (i.e., "duty of trust") is to deal with the consumer in good faith.  If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

The fiduciary duty of the broker, as agent for the lender, is the same – to deal with the consumer in good faith, educate the borrowers about loan programs, other options are available to the borrowers, perform their own diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

Here, the Borrower was placed into the current loan product without regard for the ability to repay the loan, likely, they would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur.

In addition, the above-described acts were a breach of the implied covenant of good faith and fair dealing.

## IV. VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 1916.5 AND 1916.7

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender.

First, the law requires certain procedural safeguards to protect the borrower, such as receipt of specific disclosure notices from the lender. Civil Code Section 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

*"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY". . .*

This disclosure was not provided to the borrowers at any time during the processing of this loan, nor was any alternative loan products offered to the borrowers.

In addition, the lender must notify borrowers of any changes in the interest rate and monthly payment of a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and violated the law.

These California Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

## V. SECURITIZATION & MORTGAGE ELECTRONIC REGISTRATION SYSTEM

Mortgage Electronic Registration System ("MERS") has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved the lenders money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

Since neither MERS nor the servicer have a beneficial interest in the mortgage(promissory) note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the assignment in the name of MERS, the assignment(s) executed by the MERS employee(s) is/are illegal.[4] The actual owner of the note has not executed the assignment to the new party. An assignment of a mortgage in the absence of the assignment and physical delivery of the mortgage note will result in a nullity.

It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sale or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the mortgage note.

The existence of MERS constitutes numerous violations of the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices, due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders. And, finally, there was clearly fraudulent conduct to conceal material facts to the borrower(s).

## VI. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1688

Based on the above facts and information, Borrowers were repeatedly subjected to fraudulent activities by the Lender and its agents. Further, Borrowers never received notices of their Right to Cancel. Each borrower should have received two copies each of the Notice of Right to Cancel. Therefore the Borrowers have an extended 3-year right to cancel this loan in accordance with 12 C.F.R. Section 226.23 (3), Truth Lending Act..

Pursuant to California Code of Civil Procedure Section 337.3, an action based upon the rescission of a contract in writing, the time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or mistake, the time does NOT begin to run until discovery by the aggrieved party of the facts constituting the fraud or mistake. The time does NOT begin to run until the representation becomes false. Clearly, in this case, the Borrowers had no knowledge of the fraudulent activities of the Lender until recently, that is, within the last 30 days before sending this letter.

The federal doctrine of fraudulent concealment operates to toll the "statute of limitations" where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on this part.[5]

Please read (re-read if necessary) the above letter carefully. Your compliance is required by federal law as indicated. Your failure to comply fully and completely will result in violations of the law and will incur damages being awarded to the borrower(s). Consequently, please govern yourselves accordingly. We look forward to your timely compliance and reasonable response to this letter.

---

[4] Sobel v. Mutual Development, Inc., 313 So. 2d 77 (1st DCA Fla 1975)
[5] Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348 (1874); see: Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127 (1st Cir. 1987).

Sincerely,

HIRAM M. MARTIN
Attorney at Law

cc:  Dwight D. Coleman and Mildred R. Coleman



# Pre-Litigation Summary

For

**Dwight David Coleman**
**Mildred R. Coleman**
**4220 Custis Avenue**
**Sacramento, CA 95822**

Mr. Coleman claims that his loan was split into two loans after he refinanced. However, both Deeds of Trust for the 1st and 2nd mortgages were signed on the same date. It is our allegation that Mr. Coleman was unaware of this because Segway Financial wrongfully misled him to believe that there was only one loan when in fact there were two.

Current Lender: GMAC Mortgage
Loan Number:    0307727425
Balance:            $422,382.93 (as of March 4, 2010)

Broker: Segway Financial, Inc.
        5000 Birch Street #300
        Newport Beach, CA 92660
        Agent: unknown

## 1003

There are two 1003's; one in the amount of $390,000 and the other in the amount of $105,000

| | |
|---|---|
| Loan Amount: | $390K |
| Interest Rate: | 1.00% |
| Term: | 480 mos |
| Type: | ALT A AP_1MO/1YR TRE |
| Purpose: | Refi – Cash-out/Debt Consolidation (was borrower pushed to create 2 benefits?) |
| Employment: | Not listed |
| Income: | Other - $7,200 and $4,700 = Pension/Retirement Income |
| Checking: | $7,224 and $4760 (are these amounts correct?) |

| | |
|---|---|
| Loan Amount: | $105K |
| Interest Rate: | 5.25% |
| Term: | 180 mos |
| Type: | ARM HELOC Second AQ_5YR |
| Purpose: | Refi – Cash-out/Other |
| Employment: | Not listed |
| Income: | Other - $7,200 and $4,700 = Pension/Retirement Income |

Checking:        $7,224 and $4760

## Deed of Trust

Date:   October 19, 2006
Lender:          GreenPoint Mortgage Funding, Inc.
                 Lender is a Corporation organized and existing under the laws of the State of New York
Trustee:         Marin Conveyancing Corp.
Beneficiary:     MERS

## Good Faith Estimate

| | |
|---|---|
| Line 814: Admin Fee | $675.00 |
| Line 823: Broker Processing Fee | $595.00 |
| Yield Spread Premium: | $14,556.25 |
| Line 1101: Settle/Close/Escrow Fee | $500.00 |
| Line 1106: Notary Fee | $200 |
| Line 1201: Recording Fee | $150 (see recording fee on TIL and Settlement Stmt) |

To be continued…

## Truth-In-Lending Disclosure Statement

APR:   8.248%
Finance Charge:  $1,044,195.26
Amount Financed: $387,059.80
No full payment schedule
Recording Fee: $45.00
Term:   480 months (customer)

Exhibit II

**Dwight David Coleman, Mildred R. Coleman, Pro Per**

**4220 Custis Avenue**

**Sacramento, California 95822**

**Telephone: (916) 798 1053**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF Sacramento, Limited Jurisdiction

| | |
|---|---|
| **GMAC MORTGAGE,LLC, FKA GMAC,** ) | **CASE NO: 11UD05069** |
| ) | |
| ) | **MEMORANDUM OF POINTS** |
| **Plaintiffs,** ) | **AND AUTHORITIES IN** |
| **v.** ) | **SUPPORT OF DEMURRER** |
| Dwight David Coleman, Mildred R ) | |
| Coleman, and DOES 1 through 10, ) | |
| inclusive, ) | **Date: June 30, 2011** |
| ) | **Time: 8:00 AM** |
| **Defendants** ) | **Place: Dept. 88** |
| ───────────────────── ) | **Judge:** |
| | **Reservation No:** |

## PRELIMINARY STATEMENT

Defendants Dwight David Coleman and Mildred R. Coleman, submits this memorandum of points and authorities in support of his/her demurrer to the complaint.

## Statement of Facts

See Declaration of Dwight David Coleman and Mildred R. Coleman

## ARGUMENT

POINT 1     THE COMPLAINT MUST BE DISMISSED WITH PREJUDICE

SINCE IT WAS FILED IN VIOLATION OF THE FOREBEARANCE

AGREEMENT ENTER INTO BY PARTIES AND DEMONSTRATES A HOST OF CALIFORNIA CIVIL CODE VIOLATIONS

*a.  Authority for Demurrer*

California Code of Civil Procedure Section 430.10(e) permits a party to object to a pleading, by demurrer, if "(t) he pleading does not state facts sufficient to constitute a cause of action." A party may also object to a pleading by demurrer if, among other things, there is another action pending between the same parties on the same cause of action, or the complaint fails to state a cause of action for unlawful detainer. Code Civ. Proc. 430.10.

*b.  Plaintiff did not Comply with the Terms of the Forbearance Agreement*

Under California law, banks are "legally bound by their loan modification promises" Accedes v. US Bank NA, 192 Cal. App. 4th 218 (2011) (bank is liable for fraud when homeowners rely on such promises and are damaged as a result). In the present situation, defendants relied on the loan modification promises made by the bank and were damaged by the loss of their home.

The cancelled modification agreement and then forbearance agreement entered into by the parties were being paid according to contract and should be honored as long as defendants made the agreed payments and met other obligations of the both agreements, that the bank will suspend any scheduled foreclosure sale. Defendants met and complied with all the terms and sought approval from trustee of court in both matters. Despite such compliance and effort the bank violated both and proceeded with sale.

California Civil codes centered around improper filings of specific legal documents, the failure to honor RESPA, Fair Credit Reporting Act, Securitization violations and the failure to provide defendants with proper documents whereby we could fairly determine where our financial disbursement where being distributed to and demonstrate accountability and what was originally owed, and who was the legal owner of our promissory note creates an fraudulent nature of this banking entities conduct an emphasizes a continuing misleading representation utilizing fraudulent tactics. There currently is Securities Exchange Commissions (SEC) violations against GMAC for similar action against homeowners in other states in the United States.

POINT 2

GMAC CLAIMS IT HAS A SECURITY INTEREST IN THE DEFENDANTS PROPERTY WHICH ARISES FROM A PROMISSORY NOTE AND DEED OF TRUST DATED 10/19/2006 CLEARLY IT STATES THAT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.(WHO HAS NO STANDING IN CALIFORNIA) AND GREENPOINT  MORTGAGE FUNDING ARE LISTED AS BENEFICIARY, DEFENDANT CLAIMS GMAC HAS NO SECURITY INTEREST IN DEBTORS PROPERTY. THERE IS NO COUNTY RECORDERS RECORD OF

PITE
DUNCAN
LLP

November 30, 2010

**VIA FEDERAL EXPRESS**

Dwight & Mildred Coleman
4220 Curtis Avenue
Sacramento, CA 95822

_(handwritten): They Refused to Help in 6 month Modification Plan!!_

Steven W. Pite *CA/HI/WA*
John D. Duncan *CA/TX/WA*
Peter J. Salmon
*CA/ID/HI/WA*
David E. McAllister
*AZ/CA/HI/HI/WA*

Rochelle L. Stanford
*CA/CO/NV/WA*
Josephine E. Salmon
*CA/AZ/TX*
Laurel I. Handley *AK/AR/HI/NV*
Daniel K. Labarat *CA/TX*
Eddie R. Jimenez *CA/NV/TX*
Susan L. Pelil *AL/CA/WA*
Douglas A. Toleson *AZ/TX*
Leena M. Nguyen *CA/HI*
Casper J. Rankin *CA/OR*
Charles A. Correia *CA*
Melodie A. Whitman *CA/WA*
Brian A. Paino *AZ/CA/NV/OR/WA*
Christopher McDermott *CA*
Jillian A. Benbow *CA*
Thomas N. Abbott *CA*
Drew A. Callahan *CA*
Natalie I. Nguyen *CA*
Conrad M. Nickerson *CA*
Ellen Cha *CA/HI*
Erin L. Laney *CA*
John R. Arcetral *CA*
William E. Partridge *CA*
Christopher L. Peterson *CA*
Kenn W. Short *CA*
Evan J. Klinery *CA*
Joseph C. Delmotte *CA*
Gabriel Ozel *CA/HI/TX*
Balpreet K. Tokara *CA*
Stephanie A. Schill *CA*
Huy T. Phan *CA*
Carla M. Suhsyap *CA*
Elana J. Mordan *CA*
Eric S. Young *CA*
Catherine T. Vinh *CA*
David M. Liu *CA*
Christina M. Harper *AZ*
Kyle J. Shelton *AZ*
Diego A. Bobley *HI*
Ava C. Van Velzen *ID/HI*
Christina S. Thread *NV*
Riggi Bapagetti *AZ/HI*
Alison R. Schmidt *AZ*
Christopher A. J. Swift *CA/WI*
David C. Werling *NV*
Eric A. Marshack *OR/WA*
Tracy D. Fink *TX*
Claire A. Mock *CA/TX*
Spencer Macdonald *HI*
Jesse Baker *OR/WA*
Shannon L. Kingston *WA*
Adele Vogl Karoum *NV*
David J. Boulanger *OR*
Carrie Thompson Jones *AZ*
Chad L. Butler *TX*
Alexis M. Bernholee *CA/NV*
Rachel A. DeFren *AZ/TX*
Gilbert R. Yabes *CA*
Alison C. Liebau *AZ/CA*
Matthew R. McArthur *NV*
Matthew R. Clark, III *CA*
Arnold L. Graff *CA/WI*

_Mailing—Bankruptcy_
4375 Jutland Drive, Suite 200
San Diego, CA 92117-0933
_Mailing—Unlawful Detainer_
4375 Jutland Drive, Suite 200
(P.O. Box 17935)
San Diego, CA 92177-0934
_Overnight_
4375 Jutland Drive, Suite 200
San Diego, CA 92117
Ph: (858) 750-7600
Fax: (619) 590-1385

Re:   In re Coleman, Dwight D. and Mildred R.
      Bankruptcy Case No.: 10-48790
      Loan No.: 0307727425
      Our File No.: 000001-1122468645-M

Dear Mr. & Mrs. Coleman:

Enclosed please find your cashier's check no 0036202332 in the amount of $1,375.37 in the above-referenced matter. Please note that this check is being returned as it is not sufficient to fully reinstate the loan and foreclosure proceedings have been commenced.

Should you have any questions or concerns with regard to this matter, please do not hesitate to contact our firm.

Very truly yours,

Matthew R. Clark

_(handwritten):_
1 800 - 850 - 4622
647-9052
900X
Pite = Sedran / GMAC
Duston
call back 3-5 days

Loss Med.
800-850 4622
874-3384

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
See above or visit www.piteduncan.com re individual attorney admissions.



OMB Control No. 1557-0232
Expiration Date: 12/31/2011

Comptroller of the Currency
Administrator of National Banks

# CUSTOMER COMPLAINT FORM

Please fill in this form completely.  Mail or fax this completed complaint form to:

**Office of the Comptroller of the Currency**
**Customer Assistance Group**
**1301 McKinney Street, Suite 3450**
**Houston, TX 77010-9050**
**1-713-336-4301 (Fax)**

Once we receive your completed form, you will receive an acknowledgment letter containing your
assigned case number.  Please keep your case number for future contact with our office.

***Helpful Hints:***

**Check to make sure your financial institution is a National Bank.  If you do not know the name of**
**your bank, check your bank or credit card statement.  The bank's name will be indicated on the**
**statement.**

**Have you tried to resolve your complaint with your financial institution?  The OCC recommends**
**that you attempt to resolve your complaint with your financial institution first. Please contact**
**your financial institution to allow them the opportunity to resolve your issue(s).**

**If your complaint involves more than one financial institution, you will need to submit a separate**
**complaint form for each institution involved.  You will receive separate case numbers for each**
**institution.**

***Please Note:***

- **We cannot act as a court of law or as a lawyer on your behalf**
- **We cannot give you legal advice**
- **We cannot become involved in complaints that are in litigation or have been litigated**

Exhibit 4

Loan# 0307725425

To Gmac
RE Loan#
From: ebort DWIGHT & MILDRED Celeur   STATEMENT of Facts

This letter is written to appeal to what my family feels is an injustice and violation of our rights to due process under the law. We have conflicting information about sale date and GMAC acknowledging irregularities.

My home was sold on MARCH 13TH 2011. My family tried in good faith to negotiate with GMAC after we experienced a myriad of untimely deaths in our family on both sides which we had to financial support with out of pocket expenses to resolve hardships. This caused financial hardships that affected our ability to pay and maintain our current lifestyle. We began a process in 2010 seeking to assistance to get a modification with your banking entity. After numerous attempts we finally reached a HAMP modification in October of 2010. I had also filed Chapter 7 to eliminate a multitude of accumulated debts that would hinder my ability to make good on the modification before I was approved not knowing that it would affect my trial period. I paid the first payment demonstrating my sincerity and then my 2nd payment was sent back in November 2010 saying it was cancelled due to this action. I immediately contacted GMAC and was told By a GMAC REPRESENTITIVE ON 03/25/2011, that since I had filed it voided my contract and had to wait 4-6 months to be reconsidered. I then received correspondence from your company to honor a forbearance agreement with payment starting in Feb 2011 to demonstrate good faith and wanted to keep my home. I took this document to the Trustee of my case and he advised since I had agreed in the filing of my Chapter 7 which indicates I wanted to keep my home that it was approved and to honor your request. I only filed to make sure that I could over the long haul barring potential other incidents that I could maintain my home since I am retired an on disability and was trying to simplify my financial situation.

I made my first payment again in a timely fashion to once again demonstrate that I was sincere with maintaining my home. My March payment was sent back to me and I received it back on or about March 12th or 13th. I was under the impression that you would contact to explain my alternatives which under a forbearance agreement that the servicer who made the agreement would suspend all activities related to foreclosure or sale and at least offer an opportunity to be reconsidered based on what your loss-mitigation department told me or contact


Loan # 0307727425

me regarding a sale date or other default resolution could have been met. No feasible alternative was offered and you sold my home in less than 30 days with any form which would at least allow me ample time to seek assistance since I had been approved. My family received no sale date, GMAC offered no feasible alternative and affectively sold my home in less than 30 days without what I feel would have been a professional courtesy since I had demonstrated on more than 2 occasions that I had every intent on honoring my debt. I was appalled at your actions and sought assistance again from Morris Mitigation whom helped me achieved the original modification in the first place. I have received little or no cooperation regarding having my home rescinded and giving an opportunity to make good on my debt. I have also contacted agencies regarding this matter and they have identified numerous infractions not only with this action but my actual loan via a securitization audit affecting the chain of title and a host of other violations by GMAC. Again this letter is written praying on the mercy of your bank with the hopes that consideration can be given as a commitment by my family to honor our debt but as good faith by your company to comply to remedy a proper resolution to avoid any legal battle that might incur.

This letter will be sent to the necessary entities to expedite this process. Once again thank you for your consideration and we will follow up using Morris Mitigation Services as our authorized representative within five (5) business days.

Most of your documents dating from December 2010 to date have included statement regarding offering help and assistance evaluating my circumstances. I have included a series of attachments that correlate my request and also demonstrate improper handling and false statements made by GMAC employees and other participating departments. This letter as stated has been sent to other entities regarding my claims and home.

Sincerely,

Coleman Family

FORBEARANCE
Agreement IV
EXHIBIT

Record & Return To:
GMAC Mortgage, LLC
Attn.: Loss Mitigation Department
3451 Hammond Avenue.
Waterloo, IA 50702

———————— [Space Above This Line For Recorder's Use] ————————

## ADJUSTABLE RATE LOAN MODIFICATION AGREEMENT

This Adjustable Rate Loan Agreement ("Agreement"), made this April 1, 2009 ("Effective Date") between MILDRED R
COLEMAN  DWIGHT DAVID COLEMAN   ("Borrower") and GMAC Mortgage, LLC ("Lender"), amends and
supplements that certain promissory note ("Note") dated 10/19/2006, in the original principal sum of  Three Hundred Ninety
Thousand  Dollars and No Cents ($  390,000.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or
Deed to Secure Debt (the "Security Instrument"), and said security instrument covers the real and, if applicable, personal
property described in such Security Instrument (the "Property") located at SACRAMENTO County CA. Said Security
Instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located
at 4220 CUSTIS AVE  SACRAMENTO CA, 95822 which real property is more particularly described as follows:

(Legal Description)

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument and further
acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as
defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to
extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties
hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security
Instrument (the "Principal Balance") is Four Hundred Twenty Seven Thousand Five Hundred Seventy Six Dollars and Ninety
Eight Cents ($  427,576.98). Borrower hereby renews and extends such indebtedness and promises to pay jointly and
severally to the order of Lender the Principal Balance, consisting of the amounts(s) loaned to Borrower by Lender and any
accrued but unpaid interest capitalized to date.
Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid.
2.  Borrower will pay interest at yearly rate of  2.50000% from April 1, 2009. The interest rate Borrower will pay will
change in accordance with this Agreement. The interest rate required by this Agreement is the rate Borrower will pay both
before and after any default under the terms of the Note, as amended by this Agreement.
3.  Borrower promises to make monthly principal and interest payments of $  1,463.11, beginning on May 1, 2009, and
continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on November
1, 2046 Borrower still owes amount under the Note and Security Instrument, as amended by this Agreement, Borrower will
pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA
50702 or at such other place as Lender may require.
4.  The monthly payment may change based on changes in the unpaid principal of the loan and in the interest rate
Borrower must pay. Lender will determine the new interest rate and the changed amount of the monthly payment in
accordance with this Agreement. The interest rate Borrower will pay may change on April 1, 2014 and on that day every six
months thereafter. Each date on which the interest rate could change is called a "Change Date".
5.  Beginning with the first Change Date, the interest rate will be based on the Index. The "Index" is the average of

interbank offered rates for six-month U.S. dollar-denominated deposits in the London Market ("LIBOR") as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index." If the Index is no longer available, the lender will choose a new index which is based upon comparable information. Lender will give Borrower notice of this choice.

6. Before each Change Date, Lender will calculate the new interest rate by adding Three point Five percentage points ( 3.50000%) to the Current Index. Lender will then round the result of this addition to the nearest on-eight of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date. Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment. Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again. The monthly payments will be applied first to the payment of interest due and then to the principal.

7. The interest rate Borrower is required to pay at the first Change Date will never be greater than 12.00000% or less than .00000%. Thereafter, the interest rate will never be increased or decreased on any single Change Date by more than one percentage points (1%) from the rate of interest Borrower has been paying for the preceding six months. The interest rate will never be greater than 12.00000%.

8. Before the effective date of any change, Lender will deliver or mail to Borrower notice of any changes in the interest rate and the amount of the monthly payment. The notice will include information required by law to be given to Borrower and also the title and telephone number who will answer any questions Borrower may have. Unless applicable laws requires a different method, any notice that must be given to Borrower under this Agreement will be given by delivering it or mailing it by first class mail to Borrower at the property address stated above or at a different address if Borrower gives Lender notice of Borrower's different address. Any notice that must be given to Lender under this Agreement will be given by mailing it first class mail to the Lender at the address stated in Paragraph 3 above or at a different address if Borrower is given notice of that different address.

9. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

10. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

11. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

12. As amended hereby, the provisions of the Note and Security instrument shall continue in full and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or

PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

I AM AN EMPLOYED IN THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA. I AM OVER THE AGE OF 18 AND NOT A PARTY TO THE WITHIN ACTION.

ON AUGUST 23RD 2011, I SERVED THE DOCUMENTS DESCRIBED AS DEFENDANT(S) COMPLAINT FOR DAMAGES. BY PLACING ATRUE COPY THEREOF IN A SEALED ENVELOPE ADRESSED AS STATED ON THE **ATTACHED SERVICE LIST.**

**(X) By mail as follows:**

> **(x) STATE- I AM FAMILIAR WITH THE PRACTICE OF PROCESSING CORRESPONDENCE FOR MAILING. I PERSONALLY DEPOSITED WITH THE U.S. POASTAL SERVICE ON THAT SAME DAY WITH POSTAGE THERON FULLY PREPAID AT SACRAMENTO CALIFORNIA, COUNTY OF SACRAMENTO IN THE ORDINARY COURSE OF BUSINESS. I AM AWARE THAT ON MOTION OF PARTY SERVED, SERVICE IS PRESUMED INVALID IF POSTAL CANCELLATION DATE OR POSTAGE METER DATE IS MORE THAN ONE (1) DAY AFTER DATE OF DEPOSIT FOR MAILING AFFIDAVIT.**

> **I DECLARE UNDER PENALTY OF PERJURY UNDER LAWS OF THE STATE OF CALIFORNIA THAT THE ABOVE IS TRUE AND CORRECT.**

> **EXECUTED ON AUGUST 23RD, 2011, SACRAMENTO, CALIFORNIA**

**RASHEED SALAAM**